25489. GEORGIA MARKET CENTERS, INC. et al. v. FORTSON, Commissioner.

ARGUED OCTOBER 15, 1969—DECIDED DECEMBER 4, 1969— REHEARING DENIED DECEMBER 18, 1969.

*Johnston & Shores, James L. Shores, Jr., Adams, O'Neal, Steele, Thornton, Hemingway & McKenney, H. T. O'Neal, Jr., for appellants.*

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Courtney Wilder Stanton, Marion O. Gordon, Assistant Attorneys General, Robert S. Reeves, for appellee.*

MOBLEY, Presiding Justice. Ben W. Fortson, Jr., as the Commissioner of Securities of Georgia, brought an action against Georgia Market Centers, Inc., a Georgia corporation, Alabama Market Centers, Inc., an Alabama corporation, Continental Marketing Associates, Inc., a Delaware corporation, having its principal place of business in Birmingham, Alabama, and two individuals, residents of Bibb County, Georgia, alleged to be agents of the corporate defendants. The Commissioner sought to enjoin the defendants from violating the Georgia Securities Act (Ga. L. 1957, pp. 134-163, as amended; *Code Ann. Ch.* 97-1) by selling or offering to sell Founder Purchase Contracts, alleged to be securities subject to regulation under the Securities Act.

The appeal is from an order which adjudged that the contracts are securities within the meaning of the Georgia law; and

ordered that the appellants' motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the appellants be restrained and enjoined from issuing or selling the contracts.

The case was decided on interrogatories and affidavits. In the answer of the appellants to the interrogatories of the Commissioner it was stated that Continental Marketing Associates, Inc., owns all of the capital stock of the other two corporations. Continental denied that it was offering for sale any type of contract in the State of Georgia, describing its plan as follows: "Continental utilizes a unique plan for developing sales personnel and store customers for retail discount department stores called The Market Centers. This is done through the enrollment of Founders who are given plastic purchase authority cards to distribute. These cards entitle their holders to shop at The Market Center. Only cardholders may shop at a store. There are two types of Founders—the Founder Distributor and the Founder Supervisor. Each Founder executes a Founder Purchase Contract with Continental. The Distributor pays $150 and the Supervisor pays $750 for the selection of a product such as cookware, television set, or similar houseware. Each Founder is then schooled in the marketing program and paid stipulated commissions from sales made to other Founders and from store purchases made at The Market Center stores patronized by those persons to whom they distributed the purchase authority cards. Unlike an investment contract or other type of security, the Founders who enter into Founder Purchase contracts with Continental, receive no remuneration except as a result of their individual activities in bringing about sales to other Founders and holders of purchase authority cards."

The Master Founder Purchase Contract appearing in the record shows further terms of the contract as follows: The contract may not be transferred except by devise or inheritance, or by designation of a beneficiary by a Founder. A distributor earns a commission of 4% of the retail price of merchandise each time a card distributed by him is used to purchase merchandise at a market center, less certain amounts, and receives additional purchase cards and earns commissions when other distributors

and supervisors are enrolled by him. A supervisor earns a commission of 5% of the retail purchase price of merchandise sold to holders of cards distributed by him, less certain amounts, receives additional cards and commissions for distributors and supervisors enrolled by him, and earns a commission of 25% of the commissions earned by the distributors within his sales organization, and other commissions on enrollments within his sales organization. Founders will be given reports on purchases made by holders of the cards distributed by them, and will pay their own expenses. Limitations are placed on the number of Founders which may be enrolled in any market center area. Within 30 days following the enrollment of 60% of the Founders designated for a proposed market center, Continental will acquire land upon which to construct a market center. Founders have no voice in the management of Continental, and do not share in its profits, or otherwise benefit from its activities, other than earning commissions due the Founders.

The answer to the interrogatories propounded by the Commissioners to the appellants stated that Continental plans seven stores in Georgia, and that there are 1057 Founders enrolled in Albany, 3764 in Atlanta, 2297 in Augusta, 807 in Columbus, 1817 in Macon, 2156 in Savannah, and 65 in Valdosta. Information was given regarding leases and purchases of land in the Albany, Atlanta, and Augusta areas, preparatory to constructing market centers in these areas.

The Georgia Securities Act (Ga. L. 1957, pp. 134, 136; *Code Ann.* § 97-102 (i)) defines a security as "any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of indebtedness, investment certificate, certificate of interest or participation, certificate of interest in oil, gas or other mineral rights, collateral trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate or beneficial interest in title to property, profits or earnings, or any other instrument commonly known as a security, including any guarantee of, temporary or interim certificate of interest or participation in, or warrant or right to subscribe to, convert into or purchase, any of the foregoing." Numerous exemptions from the provisions of the Act are made,

but the appellants do not claim to come within any of these exemptions.

This definition contains broad general terms, and the appellate courts of this State have established no formula by which to determine whether the contracts here involved come within any of these terms.

The United States Supreme Court in Securities & Exchange Commission v. W. J. Howey Co., 328 U. S. 293 (4) (66 SC 1100, 90 LE 1244, 163 ALR 1043), held that the test of whether there is an "investment contract" under the Federal Securities Act of 1933 is "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others; . . ."

The Supreme Court of Alabama, in Gallion v. Alabama Market Centers, Inc., 282 Ala. 679, 683 (213 S2d 841), a case involving one of the appellants here, followed the rule in the United States Supreme Court case above, and determined that a contract similar to the one involved in the present case was not a security within the meaning of the Alabama securities law. The Alabama court stated in part: "We come then to a determination of whether the profits made by the supervisors and distributors here depend solely upon the efforts of others. Clearly not. It is apparent from the facts set forth above that the commissions received by these people depend not upon the efforts of third persons, but upon their own efforts. They are paid sums dependent upon sales made by the Alabama Market Centers to customers procured through their efforts. A distributor receives no compensation or commissions unless the persons to whom he delivered purchase cards make purchases at the Alabama Market center. A supervisor receives no money unless sales of merchandise are made to people who have received purchase authority cards from a distributor who has been 'established' by that particular supervisor."

The appellee here, the Commissioner of Securities of Georgia, urges this court not to follow the rule laid down by the Supreme Court of the United States, and followed by the Supreme Court of Alabama. It is argued that the success of the Founders in this venture is inescapably tied to the efforts of Continental and

the efforts of other Founders, and that the contribution of each individual Founder is in and of itself totally inadequate to bring forth any return. It is noted that where the Federal Securities Act of 1933 included in its definition the words "certificate of interest or participation in any profit-sharing agreement," the Georgia statute omits the phrase "in any profit-sharing agreement," and it is asserted that this gives a broadening effect to this term.

The brief of the appellee attaches copies of the decision in Florida Discount Centers, Inc. v. Antinori, decided August 13, 1969, by the Circuit Court of the Thirteenth Judicial Circuit of Florida, and the affirmance of that case by the District Court of Appeals of the Second District of Florida, decided June 6, 1969. The Florida Appeals Court held that contracts somewhat similar to the one involved in the present case were "interests in or under a profit-sharing or participation agreement or scheme" within the meaning of the Florida securities statute.

The terms "investment contract" and "certificate of interest or participation," are variable terms, and we must apply some test to determine whether a particular contract comes within the meaning of one of these terms. It is our opinion that the definition of an investment contract given by the Supreme Court of the United States is a workable formula to use in testing whether a contract of the type under consideration here is subject to regulation by the Commissioner of Securities of Georgia. However, we would not mean to infer that this definition should be adhered to with such strictness that a mere token participation in an enterprise by the person investing capital would prevent the contract from being classed as a security. In testing any transaction, "form should be disregarded for substance and the emphasis should be on economic reality." Tcherepnin v. Knight, 389 U. S. 332, 336 (88 SC 548, 19 LE2d 564).

The contract under consideration in the present case promises no return to the Founder except in connection with his own efforts in obtaining other Founders or purchasers for the merchandise to be sold at the market centers. No share is sold in the stock of the appellant corporations, and there is no par-

ticipation in the profits of the appellant corporations. While the efforts of the appellants are necessary in establishing the centers and selling the merchandise in order that there may be any return to the Founder, no commission is earned by the Founder except from sales to customers obtained, directly or indirectly, by him.

Such contracts are not investments of money in a common enterprise with profits to come solely from the efforts of others, and are not securities within the meaning of the Georgia statute regulating securities. The trial judge erred in declaring them to be securities, enjoining the appellants, granting summary judgment in favor of the appellee, and denying summary judgment in favor of the appellants.

*Judgment reversed. All the Justices concur.*