CURTIS E. JENKINS *et al.*, Plaintiffs-Appellees, *v.* DEARBORN SECURITIES CORPORATION *et al.*, Defendants-Appellants.—FRANK H. PAUSE *et al.*, Plaintiffs-Appellees, *v.* DEARBORN SECURITIES CORPORATION *et al.*, Defendants-Appellants.

Fourth District Nos. 12896-97 cons.

Opinion filed September 30, 1976.

Brown, Hay & Stephens, of Springfield (Robert A. Stuart and Robert A. Stuart, Jr., of counsel), for appellants.

Gillespie, Burke & Gillespie, of Springfield, for appellees.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

The plaintiffs, Jenkins and Pause, each filed complaints seeking relief under section 13 of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1973, ch. 121½, par. 137.13). Following a bench trial of the consolidated cases, the court ordered judgment for Jenkins in the sum of $3700 and for Pause, in the sum of $5000. Each judgment awarded interest and attorneys fees.

Upon appeal, defendants argue that each judgment is against the manifest weight of the evidence and that the trial court abused its discretion in denying defendants' motions for retrial under section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 68.3) which alleged:

> "Additional evidence has come to the attention of the Defendants since the trial of this cause and which has not been presented to the Court for hearing * * *."

The trial court filed a memorandum finding that the defendants engaged in the sale of securities in a manner which "[w]orked or tended to work fraud and deceit upon the Plaintiffs in violation of Sections 12(f) and 12(g) * * *," i.e.:

> "* * * by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the

statements made, in the light of the circumstances under which they were made, not misleading; * * *." Ill. Rev. Stat. 1973, ch. 121½, par. 137.12(G).

Defendants, Gaffey and Higginbotham, are the principal shareholders and officers of Dearborn Securities Corporation (hereinafter designated Securities), which is authorized and registered to engage in security and commodity transactions. Defendant, Gleason, was employed as a salesman to sell the shares of securities in the transaction at issue.

The evidence is that the plaintiffs were respectively solicited initially by Gleason as persons from a "select few" to buy shares as "post-corporators" of securities at one dollar per share.

The essential scheme of the defendants was that: A holding company would be formed which would be called Dearborn Equity Corporation. Dearborn Securities and an insurance company which would be bought later would be put together under the holding company. This corporate arrangement would make possible the marketing of the "Dearborn Plan," which would be a combination of annuity insurance and a mutual fund. Following the formation of the holding company, there would be a public offering of Dearborn Equity stock at $3 per share and Dearborn Securities stock would be exchanged for Dearborn Equity stock on a 4-for-1 basis. If the public offering were successful, the stock purchased by plaintiffs would be worth 12 times what they paid for it. However, the holding company was never formed, and the stock became worthless.

One exhibit tendered by plaintiffs is a hand-drawn diagram of the corporate structure prepared by Gleason including hand-written notes showing that the shares of securities would be exchanged at 4-for-1, and that the shares of securities would be sold at $3 per share so that upon the incorporation of Equity plaintiffs could receive $3 for a share with an adjusted value of 25 cents.

The evidence conflicts upon the question of whether Gleason and Gaffey told the plaintiffs that the money invested would be held in escrow. The subscription agreement did not provide for an escrow and no such agreement was given. Defendant, Gleason, testifying under section 60 of the Civil Practice Act and Gaffey, each denied stating that the proceeds of the sale would be held in escrow, but it appears agreed that there was a considerable discussion of an escrow of the stock in Securities during the period of the public sale of shares in Equity. It also appears that plaintiffs were told that Securities was registered with SEC (Securities and Exchange Commission), but that in the discussion there was little or no differentiation between such registration of Securities as a business entity dealing in stocks and commodities and the shares proposed to be sold to plaintiffs. Such shares were not so registered.

The testimony and the exhibits reflect that in defendants' presentation

to plaintiffs, there was no discussion of Securities as a going corporation in which plaintiffs were investing, but rather the presentation was directed to the expectations of profit in Equity by its sale of insurance and annuity or mutual funds. The literature on such plans frequently referred to guaranteed income or savings and the return of investment under the "Dearborn Plan." It is not contended that the plaintiffs were advised how the money provided by the "post-corporators" was to be used.

Because it frames the issue of the manifest weight of the evidence contention argued, we first consider the question of the abuse of discretion in denying defendants' motion for retrial.

Following the trial on July 13, 1973, the trial court allowed defendants to present additional evidence on July 19 relevant to a notation appearing on the back of Jenkins' check given for the purchase of shares. The findings of the trial court were filed on September 11, 1973, and the judgment order September 28. The motion at issue was filed January 30, 1974, pursuant to extentions granted for filing post-trial motions.

In one aspect, it was urged that new evidence impeached the testimony of Jenkins that he was of scant experience in buying and selling securities. and consisted of records in the office of the Secretary of State showing that in 1963 Jenkins had been registered as a salesman for Northern State Securities Company, and that he had been president and a director of Providential Investment Company, organized to deal in securities in 1967.

It is not contended that the sale to Jenkins was an exempt transaction as a sale to a dealer under section 4(C) of the Act (Ill. Rev. Stat. 1973, ch. 121½, par. 137.4(C)). It is argued that such records impeach the testimony of Jenkins that while he had bought and sold some securities he was not experienced in such investments. On cross-examination, defendant, Gaffey, agreed that the plaintiffs were unknowledgeable in the matter of securities.

■■ The Illinois Securities Law is designed to protect the public not only from fraud and dishonesty, but also from incompetency, ignorance and irresponsibility of persons engaged in the business of disposing of securities to the public. (*McPherson v. Hewitt* (1975), 32 Ill. App. 3d 435, 335 N.E.2d 606.) Unless the specific words of the exemption provisions of the Act require it, private investors are not denied its protection simply because they have some experience or sophistication. *Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 323 N.E.2d 73.

In a second aspect, the motion sought to introduce records of the defendant, Securities, and purported to show that its funds were not used to speculate in commodities. Such evidence was said to impeach the testimony of plaintiffs that Higginbotham had told them that $8000 of Securities funds were lost in such speculation.

A new trial upon the basis of newly discovered evidence requires a

showing that the evidence is material and of such a conclusive nature that it would probably alter the result of the trial, that the evidence was discovered since the trial, and that it could not have been discovered before trial by the exercise of reasonable inquiry or new diligence. *Pritchett v. Steinker Trucking Co.* (1968), 40 Ill. 2d 510, 513, 240 N.E.2d 684, 685.

The records of the Secretary of State were obviously available prior to trial. Even absent the customary discovery, the record shows that defendant, Gleason, was also a director of Providential Investment Company at the time Jenkins was an officer and director.

The records of defendant, Securities, relating to commodity transactions had always been available to defendants and for the alleged purposes of impeachment of plaintiffs would not suffice to disclose what defendant, Higginbotham, may have told the plaintiffs. Again, the trial court found that the funds collected from plaintiffs were used for the ordinary business expenses of Securities so that the issue of "speculation" did not affect this determination.

■■ We can find no abuse of discretion in denying the motion where the evidence, if presented, would not have necessitated a different judgment and defendants did not affirmatively show diligence or due care to discover evidence, in fact, available prior to trial. *Powers v. Sturm* (1973), 12 Ill. App. 3d 346, 297 N.E.2d 628.

■■ Defendants' arguments that the judgments are contrary to the manifest weight of the evidence are bottomed upon the contention that plaintiffs were impeached upon the matters of testimony discussed. As we have concluded that the trial court did not err in denying the motion for retrial to permit introduction of assertedly impeaching evidence, such is not available for consideration upon questions of manifest weight.

■■ Defendants argue that the representations made concerning the prospective profit from the quick sale of the shares of Equity when formed and exchanged for the shares in Securities was merely an expression of opinion and of the sellers' view. In *Norville v. Alton Bigtop Restaurant, Inc.* (1974), 22 Ill. App. 3d 273, 317 N.E.2d 384, the trial court entered judgments for the defendants upon a finding that the representations of an unusually high and quick return upon the investment was merely "puffing." The reviewing court reversed, and in a comprehensive examination of the Illinois Securities Law concluded that such statute was intended to remove the common law rule of *caveat emptor* from the sale of securities and that the statutory right to rescind was not dependent upon an ability to establish common law fraud. Here, there was indeed a representation that the value of the shares in Securities would dramatically increase, and, as in *Norville*, such prospective increase was the principal, if not the sole reason, in the decision to invest.

Again, as in *Norville,* there was no established market for shares in Securities and unfounded predictions of a high rate of return are not permitted under the statute. It was there said that misleading statements and omissions to state a material fact necessary to make the statements made not misleading under the circumstances constitutes a violation.

■■ As to the evidence presented, the trial court heard and observed the witnesses and is properly the judge of the credibility of witnesses and the weight to be accorded the testimony of each. To reverse upon issues of fact it must appear to the reviewing court that conclusions opposite to those reached are clearly evident and that the verdict is palpably erroneous. *Anderson v. City of Chicago* (1975), 29 Ill. App. 3d 971, 331 N.E.2d 243; *Pensgard v. Powers* (1972), 8 Ill. App. 3d 646, 290 N.E.2d 642.

In the context of weight and credibility the trier of fact here could well have concluded that the testimony of the plaintiffs upon the representations of defendants concerning the escrow of funds and the SEC registration to be more credible than that of defendants.

The judgments are affirmed.

Affirmed.

CRAVEN and GREEN, JJ., concur.