**Donald L. PLUNKETT**

v.

**Carl FRANCISCO et al.**

**Civ. No. C75–920A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

April 26, 1977.

Richard R. Cheatham and Thomas C. Harney, of Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for plaintiff.

Jay I. Solomon, of Lipshutz, Suzmann & Sikes, Atlanta, Ga., for defendant Bass.

C. Michael Conroy, of Garland, Nuckolls & Kadish, Atlanta, Ga., for defendants Nelson and Francisco.

## ORDER

O'KELLEY, District Judge.

■ This civil action is before the court on plaintiff's motion for summary judgment against defendants Bass and Nelson. Plaintiff claims that these defendants are liable to him under (1) the provisions of the Georgia Securities Act of 1957, §§ 3 and 13, former Ga.Code Ann. §§ 97–104, –114, for violation of the registration requirements of that Act; (2) the provisions of the Georgia Securities Act of 1957, §§ 11, 13, former Ga.Code Ann. §§ 97–112, –114, which deal with misrepresentation; (3) the Securities Act of 1933, § 12(2), 15 U.S.C. § 77*l*(2); and (4) the Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b). Jurisdiction of this court is based upon the Securities Act

of 1933, the Securities Exchange Act of 1934, and principles of pendant jurisdiction. Crucial to the issue of liability is the question of whether the arrangement into which the plaintiff entered is a security within the meaning of the federal securities acts and the Georgia Act. The test for determining whether the contract was an investment contract within the meaning of the Georgia Act is the same as the test for determining whether it was a security within the meaning of the federal laws. *Georgia Market Centers, Inc. v. Fortson,* 225 Ga. 854, 858, 171 S.E.2d 620 (1969); *Fortier v. Ramsey,* 136 Ga.App. 203, 205, 220 S.E.2d 753 (1975).

The plaintiff in December of 1973 entered into a cattle lease agreement and a calf maintenance agreement with West Brook Cattle Corporation in order to find a tax shelter for some of his income for that year. West Brook, a Florida corporation with offices and facilities in Lake City, Florida, operated a program which essentially involved a lease of a pregnant cow under the cattle lease agreement and the maintenance and eventual marketing of the progeny under the calf maintenance agreement. The investor paid for the lease in advance and the calf maintenance expenses as incurred. Under the agreements West Brook made all decisions and took all responsibility for the impregnation of the cows, care of cows and calves at time of birth, care and feeding of cows and calves, and the eventual marketing of the calves. The investor was specifically informed that he incurred risks of abortion or death of calves and of the price of beef and of feed.

Defendant Bass sold the West Brook program to plaintiff. During the course of the meetings between plaintiff and defendant Bass, the plaintiff was shown a so-called warranty letter dated October 11, 1973, and signed by defendants Nelson and John L. Tilton, President of West Brook, as "principals[1]." The letter warranted that Tilton, Nelson, and West Brook owned, employed, leased, or otherwise controlled a certain number of cattle and certain amount of acreage in North Florida, a fully operational feed mill with sufficient capacity to feed 4,000 head of cattle and sufficient qualified, full-time personnel, working capital, and bank lines of credit to attain current objectives of management. Bass told plaintiff that Nelson had been selected as one of the five outstanding young farmers in Florida, that he had graduated with honors from the University of Florida, and that he had been recognized for high achievements in the 4–H Club on both national and state levels. Plaintiff was also shown a letter written by Clifford L. Currie, Vice President of the State Exchange Bank, grouping Nelson with West Brook. Plaintiff states in his affidavit that he relied heavily on representations contained in the letter of warranty and the maintenance agreement and on representations that Nelson was a principal of West Brook.

Plaintiff executed the agreements on December 28, 1973, and paid a total of $48,000 to West Brook to lease 200 cows. Of this amount $28,000 was paid by check and $20,000 was paid with proceeds of a loan arranged by West Brook with the State Exchange Bank. Plaintiff paid interest to the bank on this loan in the amount of $1,950 in 1974.

Plaintiff received information in October, 1974, that some of his "herd" was impregnated and that the remainder soon would be. When in February, 1975, he received a bill for maintenance of 200 calves and received no satisfactory explanation for his being billed for calves he didn't own, he visited West Brook in March and was told by defendant Francisco that the entire operation was shakey and that there were far fewer calves than there were supposed to be. On April 8, 1975, plaintiff rescinded his agreements and demanded a refund of his money.

Under the classic case defining a security, *SEC v. W. J. Howey Co.,* 328 U.S.

---

1. Plaintiff has already obtained a consent judgment against Tilton, although Tilton's financial collapse along with the collapse of West Brook has prevented a financial recovery. Plaintiff's case against the defendant State Exchange Bank and defendant Currie have been settled by releasing plaintiff from his obligation on a $20,000 note to the bank.

293, 298–299, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the elements of an investment contract are (a) the investment of money (b) in a common enterprise (c) with profits to come solely from the efforts of others. As noted above, the Georgia courts accept the *Howey* test for an investment contract for purposes of the Georgia Act, *Fortier v. Ramsey,* 136 Ga.App. 203, 205, 220 S.E.2d 753 (1975). The court finds that the elements of the investment contract are present in the cattle lease agreement and calf maintenance agreement executed by plaintiff. There can be no dispute that the first element of the *Howey* test is present— plaintiff clearly made an investment of money. The second element, commonality of the enterprise, is less obviously present in that plaintiff agreed to lease specific cows and to bear the risk that those cows would abort or that their calves would die. However, the scheme in practice involved more pooling than had been represented to plaintiff. Also, the recent Fifth Circuit decisions of *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 479 (5th Cir. 1974), and *SEC v. Continental Commodities Corp.,* 497 F.2d 516 (5th Cir. 1974), indicate that the commonality element is present as long as the fortunes of all of the investors are tied to the expertise and effort of the promoter. Interdependence and a pro-rata sharing are not required. Finally, in regard to the "solely from the efforts of others" prong of the test, the Fifth Circuit in *Koscot* at 483 specifically adopted the test of the Ninth Circuit in *SEC v. Glenn W. Turner Enterprises,* 474 F.2d 476, 482 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973): "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise."

In the West Brook arrangement, the investor, a real estate dealer, was dependent on the expertise of the promoter to oversee the impregnation of the cows, to maintain the cows and calves, and to sell the calves. The investor was not knowledgeable about the maintenance of cows or the sale of calves. Consequently, he was dependent upon the expertise of the promoter. Defendants made much of the fact that plaintiff inquired at one point about the possibility of moving some of his calves to the farm of the father of his wife's first husband in Tennessee. Defendants contend that the fact that nothing in the agreements prevented plaintiff's assuming actual control over his calves indicates that the success of the enterprise did not depend upon the expertise of the promoter to the extent necessary to make the arrangement an investment contract. From this the defendants argue that the arrangement between West Brook and the plaintiff was simply a sale of cattle. The terms of the maintenance agreement rebut this argument. The maintenance agreement clearly contemplates the complete reliance of the "herdowner" upon the facilities and personnel of West Brook to raise and maintain the calves until they reached the age to be sold. Taken together, the original cattle leasing agreement and calf maintenance agreement add up to an investment contract. For analogous arrangements found to be securities, *see Kemmerer v. Weaver,* 445 F.2d 76 (7th Cir. 1971); *American Dairy Leasing Corp.,* Staff Reply, 71–72 CCH Fed.Sec. Law Rpt. ¶ 78,-584 (Jan. 3, 1972).

Section 3 of the Georgia Securities Act of 1957, former Ga.Code Ann. § 97–104, provides:

> It shall be unlawful to sell or offer to sell any securities within this state, except those exempt under section 97–106 or those sold in transactions exempt under section 97–107, until registration of such securities shall have become effective by notification under subsection (a) or by qualification under subsection (b) of this section.

Subsections (a) and (b) both require registration with the commissioner (the Georgia Secretary of State). The security was offered and sold within the state, and transactions relating thereto occurred within the state. Plaintiff has attached as an exhibit to his motion for summary judgment a certification from the Secretary of State of Georgia which shows that there was no

registration with the Secretary of State. No exemption pursuant to sections 97–106 or 97–107 is available.

 Section 13 of the Georgia Act, former Ga.Code Ann. § 97–114, sets out the remedies for violation of the Securities Act:

Every sale or contract for sale in violation of any of the provisions of this Act . . . shall be voidable at the election of the purchaser. The person making such sale or contract for sale, and every director, officer, salesman or agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser . . . for the full amount paid by such purchaser, together with all taxable court costs and reasonable attorney's fees in any action . . . under this section. . . .

It is clear that since the court has found that the arrangement in question constituted an investment contract and, consequently, a security, since there is no exemption available and the security has not been registered with the Secretary of State, there has been a violation of the Georgia Securities Act of 1957. Plaintiff's knowledge or lack of knowledge that the registration statute had been violated is irrelevant to his recovery. *Gilbert v. Meason*, 137 Ga.App. 1, 3, 222 S.E.2d 835 (1975), *aff'd*, 236 Ga. 862, 226 S.E.2d 49 (1976). Defendant Bass, as the salesman in the transaction, is liable under the clear wording of the Georgia Act. Plaintiff's motion for summary judgment against Bass is granted for violation of the registration requirements of the Georgia Act. Since defendant Nelson is clearly neither the person making the sale or contract for sale, a director, an officer, nor a salesman, and since the court is not convinced that he acted as an agent of or for the seller, plaintiff's motion for summary judgment on the basis of the registration requirements of the Georgia Securities Act of 1957 must be denied as to defendant Nelson.

 Plaintiff's motion for summary judgment against defendants Bass and Nelson under the Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b) and under the Georgia Securities Act of 1957, §§ 11, 13, former Ga.Code Ann. §§ 97–112, –114, must be denied. The Securities Exchange Act of 1934 § 10(b) contains a scienter requirement. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The Georgia Act contains at least a requirement of knowledge of the falsehood or reckless disregard for the truth. *Mooney v. Tallant*, 397 F.Supp. 680 (N.D.Ga.1975). Since the Georgia statute tracks the language of section 10(b) of the federal act, the *Hochfelder* decision may have affected the Georgia standard as well as the federal, and a requirement of scienter might now be read in. The requirement of knowledge makes summary judgment under these sections inappropriate in most cases, as indeed it is here.

Plaintiff also contends that both defendants are liable to him under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2). This section renders liable persons who offer or sell a security

by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission.

 In the case *sub judice* an interstate transaction was clearly involved in the execution of the agreements and in the negotiation of plaintiff's check. *See, e. g., Kerbs v. Fall River Industries, Inc.*, 502 F.2d 731 (10th Cir. 1974); *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195 (5th Cir. 1960). There is no need for the plaintiff to prove reliance under this section. *Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680, 695 (5th Cir. 1971). There is, further, no re-

quirement that the plaintiff prove scienter. *Id.* There is no question but that there were material misrepresentations in both the letter of warranty and the calf maintenance agreement. It was represented to the plaintiff that West Brook had sufficient facilities, personnel, and capitalization to support the cattle leasing and calf maintenance programs. That these representations were material needs no further discussion. All of these representations were false. Accordingly, misleading statements within the meaning of section 12(2) of the Securities Act of 1933 were made to the plaintiff. Bass, as the salesman and the plaintiff's only personal contact with West Brook until after the sale, is clearly liable under section 12 of the Securities Act of 1933 for any material misrepresentations or omissions. The question of Nelson's liability is slightly more complex. The test for liability in the Fifth Circuit is whether a person is the "proximate cause" of the sale. *Lewis v. Walston & Co.*, 487 F.2d 617, 621 (5th Cir. 1973); *Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680, 693 (5th Cir. 1971). Using the analysis of decisions such as *In re Caesars Palace Securities Litigation*, 360 F.Supp. 366 (S.D.N.Y. 1973), it becomes obvious that the participation of Nelson in signing the warranty letter was, in this particular case, sufficient to bring him under section 12. Plaintiff has in his affidavit and in his deposition shown the court that he relied heavily upon the warranty letter and, specifically, upon the participation of Nelson in his decision to become involved in the West Brook program. Although imputation to Nelson of the knowledge necessary to impose liability under the Securities Exchange Act § 10(b) or the Georgia Act would be unfair on a motion for summary judgment, section 12(2) of the Securities Act of 1933 shifts the burden to the defendant to show that in the exercise of reasonable care he could not have known of the omission or falsity. If Nelson did not know that the misleading statements in the warranty letter were false, it is clear that in the exercise of reasonable care he could have known.

■ Plaintiff also contends that he is entitled to interest in the amount of 7% per annum. Under former Ga.Code Ann. § 97–114(b)2, interest at 5% is available when the seller takes advantage of the Act's special provision for avoiding liability by offering to take back the securities and tendering the full amount paid by the purchaser plus interest from the date of payment to the date of repayment. Plaintiff concedes that an award of interest must be inferred absent a tender of payments made. Plaintiff contends, however, and the court agrees, that it would be absurd to allow the defendant to escape interest payment by refusing to make the tender. Further, the court accepts plaintiff's argument that the 5% rate in the statute refers only to the tender situation and should not be applied to cases such as the case *sub judice* in which there has been no tender by defendants. Accordingly, the statutory interest rate of 7%, Ga.Code Ann. § 57–101, applies. The plaintiff is also entitled to interest under section 12(2) of the Securities Act of 1933.

Accordingly, plaintiff is entitled to judgment in the amount of $29,950 plus interest at 7% per annum, $6,186.62 plus $5.74 per day since December 28, 1976, to date of judgment, against defendants Bass and Nelson, jointly and severally. Under the provisions of rule 54(b), Federal Rules of Civil Procedure, plaintiff has moved that the court order that judgment be entered without delay as to these defendants. There being no just reason for delay, it is ordered that judgment shall be entered upon determination of the amount of attorney's fees.

■ Plaintiff is also entitled to reasonable attorney's fees against defendant Bass for violation of the Georgia Securities Act of 1957. The attorneys for plaintiff and for defendant Bass are directed to confer and to attempt to negotiate a settlement of the amount of attorney's fees. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). In the event that no agreement is possible, plaintiff's attorney may request a hearing on this question.