## 34446. DUNWOODY COUNTRY CLUB OF ATLANTA, INC. v. FORTSON.

HALL, Justice.

Appellant Dunwoody Country Club sought a declaratory judgment that its redeemable membership certificates were not securities within the meaning of Code Ann. § 97-102 (a) (16) or that Code Ann. § 97-102 (a) (16) was unconstitutionally vague and overbroad. The trial court ruled that Dunwoody issued certificates of indebtedness which were securities and were subject to the registration requirements of Code Ann. § 97-105. We reverse.

Dunwoody Country Club is a non-profit corporation operated by its members through an elected board of governors. Dunwoody recently attempted to change its method of collecting fees. Previously, members paid a flat initiation fee; under the new system, the club assesses social members an initial fee of $1,200 and golfing members, $2,400. Each member receives a "redeemable membership certificate" of half the amount paid — either $600 or $1,200.[1] This certificate does not appreciate, bears no interest and cannot be assigned or pledged. When a member dies, moves away, or resigns his membership, Dunwoody redeems the membership certificate for its face value from a special fund established for that purpose.

The Securities Act provides that a "security" is: ". . . any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of indebtedness, investment certificate, certificate of interest or participation in any profit-sharing agreement, certificate of interest in oil, gas or other mineral rights, collateral trust certificates, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, limited partnership interest, or beneficial interest in

---

[1] When the new system went into effect, the club assessed those who were already social members and golfing members $600 and $1,200, respectively, and issued to them redeemable membership certificates for that amount.

profits or earnings, or any other instrument commonly known as a security, including any certificate of interest or participation in, temporary or interim certificate for, receipt for, guaranty of, or warrant or right to subscribe to or purchase, any of the foregoing." Code Ann. § 97-102 (a) (16). The court below classified the redeemable membership certificate as a "certificate of indebtedness" and held that the purchase of a membership was the sale of a security. We, however, reject a mechanistic approach which holds that an instrument is a security whenever it' fits the literal statutory definition because "form should be disregarded for substance and the emphasis should be on economic reality." *Ga. Market Centers v. Fortson,* 225 Ga. 854, 858 (171 SE2d 620) (1969), quoting with approval, Tcherepnin v. Knight, 389 U.S. 332, 336 (1967).

The Supreme Court recently rejected a mechanistic approach to federal securities law in defining "stock." United Housing Foundation v. Forman, 421 U.S. 837 (1975). "The focus of the [Securities] Acts is on the capital market of the enterprise system: the sale of securities to raise capital for profit-making purposes, the exchanges on which securities are traded, and the need for regulation to prevent fraud and to protect the interest of investors. Because securities transactions are economic in character Congress intended the application of these statutes to turn on the economic realities underlying a transaction, and not on the name appended thereto." Id. at 849.

Some decisions by the circuit courts of appeal contain language which seems to endorse a literal reading of the Federal Securities Acts, at least in the area of notes. For example, the Fifth Circuit stated in Lehigh Valley Trust Co. v. Central Nat. Bank, 409 F2d 989, 991-992 (1969), that the "definition of a security has been literally read by the judiciary to the extent that almost all notes are held to be securities." A similar statement in SEC v. Continental Commodities Corp., 497 F2d 516, 524 (5th Cir. 1974), was quoted with approval in the plurality opinion in *Blau v. Redmond,* 143 Ga. App. 897, 902 (240 SE2d 273) (1977). The Court of Appeals classified the instrument in *Blau* as either a note or certificate of indebtedness. The court then

held that the instrument must be a security because as a note, it did not fit a statutory exemption and as a certificate of indebtedness, it had no exemptions. The *approach* followed by the Court of Appeals does not tally with the actual approach used by the federal courts[2] and is not, we believe, the correct way to proceed in deciding securities cases. Despite the language in the Lehigh Valley Trust and Continental Commodities cases to the contrary, the Fifth Circuit does not follow a literal approach. Instead, the Fifth Circuit has recognized a dichotomy between notes which represent investments and those which represent commercial transactions. The former but not the latter are subject to the Securities Acts. Reid v. Hughes, 578 F2d 634 (1978); McClure v. First Nat. Bank of Lubbock, 497 F2d 490, 493 (1974). That the note possesses the characteristics of a security, not the label "note," determines whether it is treated as a security. Compare Bellah v. First Nat. Bank, 495 F2d 1109 (5th Cir. 1974) (renewal note for bank loan intended to aid borrowers in livestock business not a security) with SEC v. Continental Commodities Corp., 497 F2d 516, supra (notes issued in partial reimbursement to customers upon suspension of trading in commodities futures options were securities).

Although Georgia's blue sky law is not precisely identical to the federal securities laws, we approve the reasoning which has rejected a literal reading of the definitional section of the Securities Acts. Therefore, the label placed on the instrument by the parties or by the courts does not determine whether the instrument is a security. Instead, the characteristics of the instrument and the underlying economic reality are the significant factors for a court to consider in classifying an instrument as a security.

The Supreme Court in SEC v. W. J. Howey Co., 328 U. S. 293 (1946), characterized an investment contract as a security when "a person invests his money in a common enterprise and is led to expect profits solely from the

---

[2]We express no opinion as to the result in *Blau v. Redmond,* on which we denied certiorari.

efforts of the promoter or third party . . ." Id. at 298-299. This test was reformulated in the more recent case, United Housing Foundation v. Forman, 421 U. S. 837 (1975). "The touchstone [of a security] is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." Id. at 852. Although Howey involved an investment contract and United Housing Foundation, stock, both cases focus on those factors which distinguish "securities" from other instruments. The elements of the United Housing Foundation test are (1) an investment in a common venture, (2) a reasonable expectation of profits and (3) entrepreneurial or managerial efforts of someone other than the investor.

We assume for purposes of analysis that the redeemable membership certificate in this case is a certificate of indebtedness. The certificate of indebtedness does not, we believe, represent an "investment" within the meaning of the Securities Act because it does not meet the second element of the test — the members of the Dunwoody Country Club had no expectation of profit from the certificate. Because the certificate bears no interest, cannot appreciate and cannot be pledged or assigned, Dunwoody attracts members solely through its social and recreational facilities and not through the prospect of financial returns on the initiation fees. Social and recreational opportunities do not represent the "profit" with which the Securities Act is concerned. The Supreme Court has stated that the "expectation of profits" means some form of *financial return*. "By profits, the Court has meant either capital appreciation . . . or a participation in earnings resulting from the use of investors' funds. . . In such cases the investor is 'attracted solely by the prospect of a return' on his investment. (Cits. omitted.) By contrast, when a purchaser is motivated by a desire to use or consume the item purchased . . . the securities laws do not apply." United Housing v. Forman, 421 U. S. at 852-853. See also International Brotherhood of Teamsters v. Daniel, —- U.S. —- (99 SC 790, 58 LE2d 808) (1979). Because members of Dunwoody Country Club are purchasing a social or recreational opportunity and not an

investment opportunity, the redeemable membership certificate is not a security. Because no expectation of profits motivates the club member, we do not reach the other elements of the United Housing test.

The Commissioner has contended that under the "risk capital" test, identified by the Court of Appeals in *Jaciewicki v. Gordarl Associates,* 132 Ga. App. 888 (209 SE2d 693) (1974), the certificate is a security. Since *Jaciewicki,* this court has not had the occasion to examine the "risk capital" test. This test has received some approval since the legislature added a combined form of the "risk capital" and managerial efforts tests to the definition of security in Code Ann. § 97-102(a)(16). "The term investment contract shall include but is not limited to an investment which holds out the possibility of return on risk capital even though the investor's efforts are necessary to receive such return if (i) such return is dependent upon essential managerial or sales efforts of the issuer or its affiliates, and (ii) one of the inducements to invest is the promise of promotional or sales efforts of the issuer or its affiliates in the investor's behalf, and (iii) the investor shall thereby acquire the right to earn a commission or other compensation from sales of rights to sell goods, services or other investment contracts of the issuer or its affiliates." Ga. L. 1974, p. 286. This sentence refers to the risk capital test, adopts language from SEC v. Glenn W. Turner Enterprises, 474 F2d 476 (9th Cir. 1973), and overrules the result in *Georgia Market Centers v. Fortson,* 225 Ga. 854, supra.[3] Although this sentence is limited to investment contracts, we have stated earlier that the essential characteristics of securities vary little from type to type.

Assuming that the legislature wished to enact some form of the risk capital test, we do not think that even under this test, this transaction is the sale of a security. In

---

[3] The Ninth Circuit cites our decision in *Georgia Market Centers* as an example of "a mechanical, unduly restrictive" approach to securities law — an approach we attempt to avoid here. SEC v. Glenn W. Turner Enterprises, supra, Fn. 7.

Silver Hills Country Club v. Sobieski, 55 Cal. 2d 811 (361 P2d 906) (1961), the first articulation of the risk capital test, the country club was a profit-making corporation. The promoters sold memberships in the club in order to organize and finance it, or as the court stated, in order "to develop a business for profit." 361 P2d 908. The fact that the purchasers of memberships did not expect a return on their capital was not sufficient to exempt the sale of memberships from the California Securities Act.

Oregon has also adopted the risk capital test. The test is concerned with "whether the [promoter] is depending on the investor for a substantial portion of the initial capital needed to start the enterprise." State v. Consumer Business System, 482 P2d 549, 555 (Or. App. 1971). In this case, as in Hurst v. Dare to Be Great, Inc., 474 F2d 483 (1973), the promoter was engaged in a profit-making enterprise and the investor was lured with the promise of financial return to provide venture capital. We believe that the present case is distinguishable from both the Oregon and California cases because Dunwoody Country Club is an established non-profit corporation whose members expect no financial return on the purchase of memberships.

Code Ann. § 97-105 (e) provides the form of securities registration by non-profit corporations. The commissioner contends that this section evidences a legislative intent that these certificates of indebtedness be registered as securities. We disagree. We believe that this section covers instruments issued by non-profit corporations where the *incentive* to purchase is the promise of profit to the investor. An example of this type of security would be the sale of interest-bearing bonds by a non-profit corporation.

Where the promoter is engaged in a profit-making enterprise but the investor will receive no financial return (Silver Hills) or where the promoter is a non-profit corporation but the investor anticipates a financial return (e.g., sale of interest-bearing bonds), the Securities Act may apply. But where the promoter is not engaged in a profit-making enterprise and the investor cannot secure *any* financial advantage, the Securities Act does not apply. The economic reality of those transactions does not

implicate the market "to raise capital for profit-making purposes." United Housing Foundation v. Forman, 421 U. S. at 849. We reach this decision mindful of the fact that the Securities Act is remedial in nature, intended for the protection of investors, and is to be broadly and liberally construed to effectuate its aim. *Fortier v. Ramsey,* 136 Ga. App. 203, 206 (220 SE2d 753) (1975).

Because of our disposition of this issue, we do not reach appellant's contention that the definitional section is unconstitutionally vague.

*Judgment reversed. All the Justices concur, except Hill, J., who dissents.*

ARGUED JANUARY 16, 1979 — DECIDED FEBRUARY 27, 1979.

*Fred A. Gilbert, Smith, Cohen, Ringel, Kohler & Martin, Robert D. Pannell, Marion Smith, II,* for appellant.

*Arthur K. Bolton, Attorney General, Michael R. Johnson,* for appellee.

HILL, Justice, dissenting.

The majority opinion finds that a certificate of indebtedness issued by an established non-profit corporation (a country club) is not a security within the meaning of the state securities law where the investor has no expectation of financial return (profits). But what about the investor's expectation of return of his investment (capital)? The majority point out that the investors here do not expect any financial advantage. But do they expect financial disadvantage?

The last investors to seek return of their investment here could well be losers as in a typical pyramid scheme. To demonstrate this conclusion, I take the liberty of quoting from the trial judge's order: "The funds received from the sale of certificates are to be used in two ways. First, at least $50,000.00 is to be kept in trust for the purpose of redeeming certificates. Second, trust funds in excess of $75,000.00 are to be used for retirement of short term and long term debt, capital improvements, and master plan and long range capital improvement

studies." The capital improvements include purchasing electric golf carts, painting the clubhouse, replacing worn carpets, repairing the clubhouse roof, repairing tennis courts, etc.

"If the funds in the trust prove insufficient to pay certificates presented for redemption, then redemption is to take place on a first-come, first-served basis. *Upon liquidation* of Dunwoody, certificates are to be redeemed *pro rata* after the payment of taxes and debts. . .

"The instant case bears resemblance to *Blau v. Redmond,* 143 Ga. App. 897 (1977). The issuer is a non-profit corporation. The instrument issued is a redeemable certificate which affiliates (present and prospective, in the case at bar) are required to buy. One purpose of the issue is to raise money for capital improvements, another is to retire debt. . .

"Like the parents of the prospective students in *Blau,* prospective members of Dunwoody must make an 'investment' decision — whether to join the club and provide capital through the redeemable certificate plan, in *expectation of full redemption* upon disassociation from the club. Existing members also have a significant 'investment' decision to make — not only whether to contribute added capital, but also whether to forego their prior contributions by relinquishing their membership. Only through the common accumulation of capital envisioned by the plan will the benefits sought to be achieved (a financially healthy and up-to-date facility) materialize, so as to enable the club to succeed as a continuing business. *The financial well-being of the club directly affects the redeemability of the certificates;* if there are insufficient funds in the trust to redeem a certificate, holders are placed on a waiting list, and *if the club is liquidated, a pro rata distribution takes place after payment of taxes and debt.* Plaintiff, although a non-profit enterprise, is nevertheless subject to the same economic perils as any other business. Non-profit corporations are included within the ambit of the Georgia Securities Act. While the risks involved here may be small, there still exists the possibility that a present or prospective member, having made his 'investment' decision based upon the prospect of receiving *full redemption* of his

certificate, *will be deprived of full redemption because of the club's financial difficulty*. It is for these reasons that the Court believes that the decision to take part in the redeemable certificate plan, which a present or prospective member of Dunwoody must make, is the type of decision the Securities Act was designed to encompass. Therefore, as in *Blau*, the redeemable certificates are 'securities'." (Emphasis supplied.)

I would affirm the decision of the trial judge.