Ronald H. Alenstein, Shea & Gold, New York City, for plaintiff.

Ronald P. Mysliwiec and Hyla Pottharst, Paul, Hastings, Janofsky & Walker, New York City, for defendants.

**MacPEG ROSS O'CONNELL and GOLDHABER, INC., a New York Corporation, Plaintiff,**

v.

**Paul R. CASTELLO, Mark R. Chandler, George Sokolowski, and Bonnie B. Stewart, Defendants.**

**No. 86 CV 2817.**

United States District Court, E.D. New York.

April 30, 1988.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This action involves counterclaims under federal and state law. Defendants move for summary judgment to dismiss all of plaintiff's claims and to award defendants judgment on one counterclaim. For the reasons discussed below, the motion is denied without prejudice.

## FACTS

The defendants traded in stock options in accounts opened with plaintiff, a corporate broker-dealer. Unfortunately for defendants, their investment decisions proved less than astute and they sustained large losses. Unfortunately for plaintiff, its broker-employee who executed the transactions was not registered to do so under state law, and the funds in accounts opened by defendants did not cover defendants' losses, forcing plaintiff to make up the difference. Plaintiff unsuccessfully demanded payment from defendants. Not surprisingly this lawsuit ensued, with the parties trading allegations of fraud, racketeering, and breach of contract.

The material facts are not disputed. Plaintiff, MacPeg Ross O'Connell and Goldhaber, Inc. ("MacPeg"), is a New York

corporation and a registered broker-dealer in all relevant jurisdictions. Defendants are individuals who live and work in Connecticut. In June and July of 1986, the defendants opened individual accounts with plaintiff to trade in options contracts. The aggregate of defendants' investments exceeded $78,000. The parties agreed that defendants would pay plaintiff a commission on each transaction. From June until August 15, 1986, plaintiff earned over $50,000 in commissions, for which plaintiff alleges that it did not receive payment.

All of defendants' transactions were executed by Peter DePalma, an employee of plaintiff. At all relevant times, DePalma was not registered under Connecticut law to broker securities.

Defendants seem to have profited from their initial transactions. By August, however, defendants had sustained losses allegedly about $385,000 in excess of the funds they had deposited with plaintiff. Plaintiff alleges that on August 12, Ralph McNamara, a registered broker and the president of MacPeg, spoke over the telephone with the defendants and confirmed that they had authorized certain transactions. Defendants deny this allegation.

At some point prior to August 15, plaintiff demanded payment of $385,000 as a condition of further trading by defendants. Defendants refused to pay. Shortly thereafter, plaintiff commenced this action.

The gravamen of the Complaint is that defendants opened their accounts knowing that they could not afford to pay for large transactions or commissions and intending to pay only if defendants profited from trading. Claim I of the Complaint alleges fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder. Claim II alleges fraud under the Racketeer Influenced and Corrupt Organizations law ("RICO"), 18 U.S.C. §§ 1961–1968. Claim III apparently alleges breach of contract under state law, and Claim IV alleges the tort of fraud under New York law. The Complaint demands compensation in excess of $385,000 on Claims I, II, and IV, and treble damages

and attorneys' fees and costs on the RICO claim.

The defendants answered and counterclaimed. Counterclaims I and II allege fraud under Section 10(b) of the 1934 Act and Rule 10b–5. Counterclaims III and IV allege breach of fiduciary duty under unspecified state law. Counterclaim V alleges a violation of Conn.Gen.Stat.Ann. § 36–471 *et seq.* (West 1987 & Supp.1988), which requires registration of brokers. Counterclaim VI is the increasingly obligatory RICO count. Counterclaims VII and VIII allege fraud under Sections 12(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77*l*, 77o. Counts I through V, VI and VIII demand damages of up to $465,667.60. The RICO counterclaim, of course, demands treble damages plus attorneys' fees and costs.

Defendants move for summary judgment to dismiss the Complaint and for entry of judgment on Counterclaim V. They reason that DePalma's failure to register under Connecticut law renders the transactions between plaintiff and defendants voidable and subject to rescission by defendants. Having chosen to rescind, defendants argue, they are entitled to restitution of account funds and commissions paid to plaintiff. Defendants also argue that plaintiff, as the employer of DePalma, failed to abide by Connecticut's registration requirement, and should be precluded from recovering against defendants on either a breach of contract or fraud theory.

## DISCUSSION

Connecticut's version of the Uniform Securities Act, commonly referred to as the Blue Sky Law, provides that "[n]o person shall transact business in [Connecticut] as a broker-dealer or agent unless he is registered under this chapter." Conn.Gen. Stat.Ann. § 36–474(a). A buyer who has dealt with an unregistered broker may sue the broker and any person who controlled him to recover consideration paid for the securities, plus interest, costs, and attorneys' fees. *See id.* § 36–498(a)–(c). The controlling person is liable if it knew or reasonably could have known that the deal-

er was unregistered. *See id.* § 36–498(c); *see also Moerman v. Zipco, Inc.*, 430 F.2d 362, 365 (2d Cir.1970) (per curiam) (under predecessor statute, liability imposed on controlling person if it knew or reasonably could have known of violation by employee).

MacPeg does not dispute defendants' assertion that the Connecticut statute applies in this case and covers all of transactions between DePalma and defendants. *See* Conn.Gen.Stat.Ann. § 36–502(b), (c). Plaintiff concedes that § 36–498 permits a purchaser to void a transaction, and does not dispute defendants' assertion that MacPeg knew or should have known that DePalma was unregistered.

■ These facts, with nothing more, would permit defendants to dip into the arsenal of remedies established by § 36–498. *See Moerman v. Zipco, Inc.*, 302 F.Supp. 439, 451 (E.D.N.Y.1969), *aff'd mem.*, 422 F.2d 871, *rehearing denied per curiam*, 430 F.2d 362 (2d Cir.1970); *see also Merchant v. Oppenheimer & Co.*, 568 F.Supp. 639, 643–44 (E.D.Va.1983) (Virginia law), *aff'd in part and rev'd in part on other grounds sub nom. Dixon v. Oppenheimer & Co.*, 739 F.2d 165 (4th Cir.1984); *Stimmel v. Shearson, Hammill & Co.*, 411 F.Supp. 345, 347–49 (D.Ore.1976) (Oregon law); *Piantes v. Hayden–Stone, Inc.*, 30 Utah 2d 110, 514 P.2d 529, 529–30 (1973) (Utah law), *cert. denied*, 415 U.S. 995, 94 S.Ct. 1599, 39 L.Ed.2d 893 (1974); *Guadina v. Haberman*, 644 P.2d 159, 168 (Wyo.1982) (Wyoming law). Here, however, plaintiff alleges that defendants committed fraud when making securities transactions. Accepting this allegation as true, as I must, I conclude that it precludes defendants from resorting to § 36–498.

■ Blue Sky Laws are designed to protect the public from fraudulent and deceptive securities practices, *see Parvin v. Davis Oil Co.*, 524 F.2d 112, 117 (9th Cir. 1975); *O'Neill v. Florida*, 336 So.2d 699, 700 (Fla.Dist.Ct.App.1976); *Logan v. Panuska*, 293 N.W.2d 359, 362 (Minn.1980), and from incompetent and irresponsible dealers, *Jenkins v. Dearborn Securities Corp.*, 42 Ill.App.3d 20, 355 N.E.2d 341, 344 (1976). They should be construed broadly in order to effect these goals. *See Robertson v. White*, 635 F.Supp. 851, 857 (W.D. Ark.1986); *Dunwoody Country Club of Atlanta, Inc. v. Fortson*, 243 Ga. 236, 253 S.E.2d 700, 705 (1979).

It would be unreasonable and inconsistent with the laws' purpose to apply them slavishly and permit a purchaser who has engaged in fraud to profit from his wrongdoing. *See Hayden v. McDonald*, 742 F.2d 423, 433 (8th Cir.1984) (" '[w]hile [Minnesota's] securities laws intend protection of the purchaser, they do not intend such results whatever the equities of a particular case' ") (quoting *McCauley v. Michael*, 256 N.W.2d 491, 497 (Minn.1977)), *overruled per curiam on other grounds, Austin v. Loftsgaarden*, 768 F.2d 949 (8th Cir.1985), *rev'd*, 478 U.S. 647, 106 S.Ct. 3143, 92 L.Ed. 2d 525 (1986).

Although plaintiff violated Connecticut's registration requirement, the seriousness of plaintiff's infraction would be outweighed by defendants' commission of fraud. Thus, at this time, the court will not hold that defendants are entitled to statutory remedies and protections.* The Court is prepared to entertain a renewed summary judgment motion by defendants that places the issue of defendant's alleged fraudulent conduct before the Court. Ac-

---

* The unusual feature of this case is that a securities broker, quite obviously a party with sophistication in securities trading, alleges fraud by *purchasers.* Although the record before the Court is not fully developed on this point, I note that plaintiff does not contradict defendants' assertion that plaintiff possesses no evidence to support its allegation of fraud.

The mere allegation presently is sufficient to deny defendants otherwise available statutory remedies. If, however, the allegation proves unfounded, plaintiff will have forestalled a relief award to which defendants are entitled. If the defendants renew their summary judgment motion and should such motion be granted, the Court will seriously entertain a motion for sanctions under Fed.R.Civ.P 11, for fees and costs incurred during the period that commences on the day that this Order is filed.

cordingly, defendants' summary judgment motion is denied without prejudice.

SO ORDERED.