S92G0381. COHEN v. WILLIAM GOLDBERG & COMPANY, INC. et al.

(423 SE2d 231)

BELL, Presiding Justice.

This case involves the determination whether certain stock of a closely-held corporation qualifies as a "security" for purposes of the Georgia Securities Act of 1973, OCGA Title 10, Ch. 5, and the federal securities acts. The trial court granted cross-motions for partial summary judgment against all claims stemming from alleged violations of

the state and federal securities laws. The Court of Appeals affirmed, holding that the stock neither met the state or federal statutory definition of a security, *Cohen v. William Goldberg & Co.*, 202 Ga. App. 172, 179 (5) (413 SE2d 759) (1991), nor qualified as a security under the "economic reality" test, id. at 179-180. We granted certiorari, and for the following reasons we hold that the stock meets the statutory definitions of a security.

1. The initial question for our consideration is the appropriate test for determining whether the stock is a security. In *Tech Resources v. Estate of Hubbard*, 246 Ga. 583 (272 SE2d 314) (1980), this Court applied the federal "economic reality" test that had been outlined in *SEC v. W. J. Howey Co.*, 328 U. S. 293 (66 SC 1100, 90 LE 1244) (1946). The economic reality test is that "[i]n order for a transaction to constitute a securities transaction under the law, there must be an investment, a reasonable expectation of profits, and a reliance on the management of another party to bring about the profits." *Tech Resources*, supra, 246 Ga. 585. The United States Supreme Court, however, subsequently explained that the economic reality test was not the threshold test for deciding whether stock is a security. *Landreth Timber Co. v. Landreth*, 471 U. S. 681 (105 SC 2297, 85 LE2d 692) (1985). In *Landreth Timber* the Supreme Court applied a "stock characterization" test as the initial inquiry to determine whether the stock in question there should be treated as "securities":

> It is axiomatic that "[t]he starting point in every case involving construction of a statute is the language itself." [Cits.] . . . The face of the [federal statutory] definition shows that "stock" is considered to be a "security" within the meaning of the [federal securities] Acts. . . . [M]ost instruments bearing such a traditional title are likely to be covered by the definition. [Cit.]

> [But] the fact that instruments bear the label "stock" is not of itself sufficient to invoke the coverage of the Acts. Rather, . . . we must also determine whether those instruments possess "some of the significant characteristics typically associated with" stock, [cit.], recognizing that when an instrument is both called "stock" and bears stock's usual characteristics, "a purchaser justifiably [may] assume that the federal securities laws apply," [cit.]. [Those] characteristics usually associated with common stock [are] (i) the right to receive dividends contingent upon an apportionment of profits; (ii) negotiability; (iii) the ability to be pledged or hypothecated; (iv) the conferring of voting rights in proportion to the number of shares owned; and (v) the capacity to ap-

preciate in value. [Cit.] [*Landreth Timber*, supra, 471 U. S. at 685-686.]

Having set forth the stock characterization test, the Supreme Court then addressed the argument that it was necessary in every instance to "look beyond the label 'stock' and the characteristics of the instruments involved to determine whether application of the [federal] Acts is mandated by the economic substance of the transaction." Id. at 688. The Court rejected that argument, distinguishing prior cases such as *Howey*, supra, 328 U. S., and *United Housing Foundation v. Forman*, 421 U. S. 837 (95 SC 2051, 44 LE2d 621) (1975), as having

> involved unusual instruments not easily characterized as "securities." [Cit.] Thus, if the [federal] Acts were to apply in those cases at all, it would have to have been because the economic reality underlying the transactions indicated that the instruments were actually of a type that falls within the usual concept of a security. In the case at bar, in contrast, the instrument involved is traditional stock, plainly within the statutory definition. *There is no need here, as there was in the prior cases, to look beyond the characteristics of the instrument to determine whether the Acts apply.* [Emphasis supplied.] [*Landreth Timber*, 471 U. S. at 690.]

The application of *Landreth Timber* to Georgia law was first considered by the Court of Appeals in *Henderson v. KMSystems*, 188 Ga. App. 893, 896-897 (2) (374 SE2d 550) (1988). We now adopt the Court of Appeals' two findings therein concerning the appropriate integration of *Landreth Timber* with *Tech Resources*, supra, 246 Ga. The first of those findings was that

> *Landreth Timber* provides appropriate guidance in resolving issues of whether particular "stock" is a "security" under the amended Georgia Securities Act of 1973. In applying the *Landreth* stock-characterization test to . . . transaction[s] . . . , we will use a balancing test. The appropriate test to be employed is whether the . . . stock bears such characteristics usually associated with common stock that a purchaser justifiably may assume that appropriate security laws apply. [*Henderson* at 897.]

The second finding by the Court of Appeals which we adopt is that if (and, we emphasize, *only if,*) the stock does "not meet the statutory definition of 'stock' under either the Georgia or federal securities act," id., the next inquiry should be

whether [the] stock otherwise qualifies as a security within the meaning of OCGA § 10-5-2 (16). The test appropriate for this determination is the *Howey* economic reality test, as that test has been tailored by *Tech Resources*[, supra, 246 Ga.,] for application under the Georgia Securities Act, to resolve issues concerning "investment contracts" and any "instrument commonly known as a 'security.'" [*Henderson*, supra, 188 Ga. App. at 897-898.]

2. We begin our analysis of the present case by applying the stock characterization test to the facts in order to determine whether the stock is a "security." In *Henderson* itself, the Court of Appeals found that the stock at issue (referred to as "the KMS stock") was not classifiable as "stock" for purposes of the state and federal securities laws because it did not have the characteristics of "negotiability" and "the ability to be pledged or hypothecated" which were specified in *Landreth Timber*, and also because the stock was unregistered:

We find that the characteristics of the KMS stock do not justifiably give rise to [the] assumption [that the appropriate security laws apply.] Particularly, the KMS stock contained a conspicuous notice that substantially impaired both the negotiability of the stock and its ability in the real world of business to be pledged or hypothecated effectively, and also expressly negated any assumption that the securities had been registered under either the Georgia or federal securities act. Accordingly, we find that the KMS stock does not meet the statutory definition of "stock" under either the Georgia or federal securities act. [*Henderson*, supra, 188 Ga. App. at 897.]

In this case the Court of Appeals again applied the stock characterization test, and reached the conclusion that the stock in question does not meet the statutory definition of "security." And, as in *Henderson*, the Court of Appeals reached that conclusion because of restrictions on negotiability and lack of registration:

Substantially similar to the situation in *Henderson*, the parties sub judice signed a shareholders' agreement which provided in pertinent part that each certificate would contain a notice stating (1) that the stock was subject to the conditions in the shareholders' agreement (such as restrictions on transfer without WGC's [the corporation issuing the stock] prior written consent and the right of WGC to repurchase the stock upon the shareholder's death, retirement, or termination) and (2) that the stock was not registered under the fed-

eral or Georgia securities acts and could not be sold or otherwise transferred unless the securities were registered. Accordingly, because of the substantial impairment on the negotiability of the stock which the conditions presented and the express negation of any assumption that the Georgia or federal securities acts applied, the stock here, as in *Henderson*, did not meet the statutory definition of "security" under either the Georgia or federal securities act. [Cit.] [*Cohen*, supra, 202 Ga. App. 179.][1]

However, we find that the stock meets the stock characterization test, notwithstanding the restrictions on negotiability and the unregistered status of the stock.

(a) As to the negotiability problem, we find persuasive the opinion of the United States Court of Appeals for the Second Circuit in *Sulkow v. Crosstown Apparel*, 807 F2d 33, 37 (2nd Cir. 1986). In that case plaintiff Sulkow alleged that he agreed to purchase one-third of stock from a closely-held corporation, Crosstown Apparel, pursuant to a Shareholders' Agreement. Addressing the contention that the stock in question was not a "security" within the meaning of *Landreth Timber*, supra, 471 U. S., the Second Circuit said that

[t]he fact that Crosstown was a close corporation, with the Shareholders' Agreement envisioning some limitations on the stock's negotiability and pledgeability, is insufficient to negate the character of the stock as a security. Limitations on the transfer of stock in close corporations are common, but neither the small size of the corporation nor the restrictions on transferability remove such a corporation's stock from the reach of Rule 10b-5. "[T]he [1934 Act] has always been understood to apply to transactions in shares of close . . . corporations," [cits.], even though frequently there are some restrictions on the transfer of the stock of such corporations, [cits.]. Simply put, when parties implement joint ownership in a profit-making venture through a corporation rather than a partnership, "[h]aving decided to deal in stock, they br[ing] their transaction under the provisions of the federal securities statutes." [Cit.]

For the above reasons, we conclude that the stock that the complaint alleges Sulkow agreed to purchase was a secur-

---

[1] In both *Henderson*, supra, 188 Ga. App. at 897-898, and *Cohen*, supra, 202 Ga. App. 179-180, the Court of Appeals found that the respective stocks were not securities under the economic reality test.

ity within the meaning of the 1934 Act and Rule 10b-5. [*Sulkow*, supra, 807 F2d at 37.]

For the same reasons, we hold that the restrictions on negotiability in the present case were usual and customary for closely-held corporations, and that they did not negate the stock's character as a security. *Henderson*, supra, 188 Ga. App., is overruled to the extent that it holds to the contrary.

(b) We further hold that the unregistered status of the securities in the present case does not negate their character as a security, since the Georgia and federal securities acts contemplate that stock may be a "security" and yet be unregistered. See, e.g., OCGA § 10-5-8 and 15 USC § 78l, which list types of "securities" that are *exempt* from registration. *Henderson*, supra, 188 Ga. App., is overruled to the extent that it holds to the contrary.

3. Accordingly, we hold that the factors specified by the Court of Appeals in this case did not operate to negate the character of the stock as a security within the meaning of the state and federal securities laws,[2] and that the judgment of the trial court must be reversed insofar as that court granted the cross-motions for partial summary judgment which removed from the suit all claims arising from the alleged violations of those laws.[3]

*Judgment reversed in part. All the Justices concur, except Hunt, J., who concurs in the judgment only; Hunstein, J., not participating.*

DECIDED DECEMBER 1, 1992 —
RECONSIDERATION DENIED DECEMBER 17, 1992.

*Powell, Goldstein, Frazer & Murphy, Frank Love, Jr., William G. Leonard, James D. Meadows,* for appellant.

*Gambrell, Clarke, Anderson & Stolz, Irwin W. Stolz, Jr., Bedford, Kirschner & Venker, Andrew R. Kirschner,* for appellees.

*Michael J. Bowers, Attorney General, Beverly B. Martin, Senior Assistant Attorney General, David I. Adelman, Staff Attorney,* amicus curiae.

---

[2] There is no contention that the stock failed in any other way to meet the stock characterization test.

[3] Because we have found that the stock is a security under the stock characterization test, we do not reach the question whether it qualifies under the economic reality test. We also do not address the Court of Appeals' application of the economic reality test in *Henderson*, supra, 188 Ga. App.