A97A0423. HUGGINS et al. v. CHAPIN.
(489 SE2d 109)

McMURRAY, Presiding Judge.

On March 19 and April 12, 1993, J. Thomas Chapin gave Ronald G. Huggins two checks totaling $50,000 in exchange for a ten percent interest in Huggins' closely held corporation, I. H. International, Inc. ("IHI"). A week later (April 19, 1993), Huggins hired Chapin, gave him a salary and named him vice president of IHI. After discovering documents in June 1993, revealing that IHI was worth less than Huggins had disclosed, Chapin sought to rescind his ten percent interest in IHI and redeem his $50,000. Huggins refused to cancel the purchase, but executed a document on September 9, 1993, which provides as follows: "This letter documents the transactions that took place March 19, 1993 and April 12, 1993 regarding the purchase of partial ownership of I. H. International, Inc. The transactions were for $30,000 and $20,000 respectively. Based on extensive discussions and negotiations [between Chapin and Huggins, the parties] agreed that the $50,000 investment represented a 10% ownership position in the company."

Chapin brought an action against Huggins and IHI, alleging that Huggins duped him into investing in IHI by giving false infor-

mation about the corporation's worth and that Huggins violated Georgia's Securities Act of 1973 by failing to register the securities transaction. The trial court granted partial summary judgment with regard to Huggins' securities law violation, awarding Chapin "the sum of $50,000.00, the amount invested, plus interest from the date of investment to the date of judgment, and all costs and expenses of litigation, including reasonable attorneys' fees pursuant to OCGA § 10-5-14 (a)." This appeal followed. *Held*:

1. Huggins contends the trial court erred in granting Chapin's motion for partial summary judgment, arguing that Chapin's ten percent investment in IHI was neither a "stock" transaction nor an "investment contract" within the meaning of OCGA § 10-5-2 (26). This subsection defines "stock" transactions and "investment contracts" as securities that are subject to Georgia's Securities Act of 1973.

We must first choose the appropriate test for determining whether the transaction between Chapin and IHI is a regulated securities transaction. "In *Tech Resources v. Estate of Hubbard*, 246 Ga. 583 (272 SE2d 314) (1980), [the Supreme] Court [of Georgia] applied the federal 'economic reality' test that had been outlined in *SEC v. W. J. Howey Co.*, 328 U. S. 293 (66 SC 1100, 90 LE 1244) (1946). The economic reality test is that '(i)n order for a transaction to constitute a securities transaction under the law, there must be an investment, a reasonable expectation of profits, and a reliance on the management of another party to bring about the profits.' *Tech Resources*, supra, 246 Ga. 585. The United States Supreme Court, however, subsequently explained that the economic reality test was not the threshold test for deciding whether stock is a security. *Landreth Timber Co. v. Landreth*, 471 U. S. 681 (105 SC 2297, 85 LE2d 692) (1985). In *Landreth Timber* the Supreme Court applied a 'stock characterization' test as the initial inquiry to determine whether the stock in question there should be treated as 'securities.'" *Cohen v. William Goldberg & Co.*, 262 Ga. 606, 607 (1) (423 SE2d 231). This analysis requires scrutiny of documents evidencing an investment transaction to determine if the documents alone convey traits typically associated with stock so as to justify the purchaser's belief that the transaction involved a regulated stock transfer. Id. at 607-608. Such an analysis, however, is not workable in the case sub judice because Chapin's $50,000 investment in IHI was complete on April 12, 1993, long before the parties executed the September 9, 1993 letter outlining the terms of Chapin's investment in IHI. We therefore determine whether Chapin's $50,000 contribution to IHI was an "investment contract" under the "economic reality" test outlined in *SEC v. W. J. Howey Co.*, 328 U. S. 293, supra.

" ' "(T)he touchstone (of a security) is the presence of an invest-

ment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." (Cit.)' *Tech Resources,* supra at 584. '(T)here must be an investment, a reasonable expectation of profits, and a reliance on the management of another party to bring about the profits.' Id. at 585." *Cohen v. William Goldberg & Co.,* 202 Ga. App. 172, 179 (5) (413 SE2d 759), rev'd on other grounds, 262 Ga. 606, supra.

In the case sub judice, Huggins testified during his deposition that Chapin's investment entitled him to distribution of company profits "relative to his ownership." This admission conclusively satisfies the first two elements of the "economic reality" test. That is, Chapin's $50,000 payment to IHI was an investment by which he may reasonably have expected to profit. With regard to the third element of the "economic reality" test, Huggins argues that Chapin's employment as IHI's vice president placed his $50,000 payment outside the realm of a regulated securities transaction.

The policy behind the third element of the *Howey* test "is to protect the investor with the shield of the securities laws when the promoter or syndicator puts forth 'the essential managerial efforts which affect the failure or success of the enterprise. . . .' *SEC v. Glenn W. Turner Enterprises,* [474 F2d 476, 483 (1973)]." *D. K. Properties v. Osborne,* 143 Ga. App. 832, 833 (1), 834 (240 SE2d 293). See Carney, Securities Practice — The Law in Georgia, § 2-1 through 2-4. With this perspective in mind in the case sub judice, we first look to Chapin's deposition testimony that he came to work for IHI with the expectation of "developing new business[, creating] marketing brochures, taking the client lists that [Huggins] had previously in his files with names and contacts, [calling these contacts] up[, setting] up the office so that it was a functional operation of establishing new business, bidding jobs, looking at the profitability of jobs, and then accounting for the profitability at the end of the job." Chapin gave no indication that he had any expectation or that he was ever given any authority to manage or control IHI's corporate destiny.

Huggins affirmed the view that Chapin was nothing more than an employee, explaining during his deposition that he hired Chapin as a salaried employee and that he "was a little apprehensive about bringing [Chapin] on from a standpoint of how long it was going to take [him] to come up to speed to be able to bring revenue into the company." Further, while it is undisputed that Huggins gave Chapin title as IHI's "Vice President," Huggins admits that he did not give Chapin any executive or operational powers. Specifically, Huggins testified (during his deposition) that he "held all offices in the corporation [during Chapin's employment]." Huggins explained that, while negotiating Chapin's employment and $50,000 investment, he informed Chapin, "I'm in charge of the company, and for that amount

of money I'm not going to share past financial statements, which I didn't, nor was I going to share any future financial statements, which I haven't." Huggins also explained that, "When I say we, I mean I.H. International which was basically me." These admissions reveal that Huggins — at all relevant times — was not only IHI's only intended skipper but also the only person charged with essential managerial control affecting IHI's failure or success. Because of Huggins' admissions, we cannot say that Chapin's $50,000 investment in Huggins' closely held corporation was anything but an "investment contract" subject to Georgia's Securities Act of 1973. Accordingly, the trial court did not err in granting Chapin's motion for partial summary judgment.

2. The trial court did not err in concluding that the circumstances in the case sub judice do not support IHI's and Huggins' reliance "on the doctrine of pari delicto to avoid liability for their failure to register the security." See *Nash v. Jones*, 224 Ga. 372 (162 SE2d 392).

3. We do not address Huggins' contention that the trial court erred in failing to set-off Chapin's damage award by the amount IHI paid Chapin in salary because this issue was not enumerated as error. *West v. Nodvin*, 196 Ga. App. 825, 830 (4) (b) (397 SE2d 567).

*Judgment affirmed. Beasley and Smith, JJ., concur.*

DECIDED JULY 15, 1997 — ■■■■■■■■

*Decker & Hallman, F. Edwin Hallman, Jr., David C. Moss*, for appellants.

*Wilson, Strickland & Benson, Mary M. Brockington, Daniel I. MacIntyre IV*, for appellee.