A99A2298. GLW INTERNATIONAL CORPORATION et al. v. YAO et al.
(532 SE2d 151)

RUFFIN, Judge.

Jian Yin Yao and Zhaoqing Crafts & Arts Industry Company sued GLW International Corporation, China Crafts & Art, Inc., Li Wen and Robert Wen for fraud and misrepresentation, theft by deception or conversion, interference with contractual relations, breach of contract, and breach of fiduciary duty stemming from a failed joint venture between GLW and Zhaoqing Crafts. The defendants counterclaimed for breach of fiduciary duty, breach of contract, and conversion, among other claims. The jury awarded $30,000 to plaintiffs, and $7,250 to defendants. After offsetting the two verdicts, the court entered a final judgment in the amount of $22,500 in favor of plaintiffs. Defendants appeal. For reasons which follow, we affirm.

In 1992, Yao worked in Japan for Zhaoqing Crafts, a Chinese corporation which manufactured and exported rosewood furniture. After making inquiries with friends about moving to the United States, Yao was contacted by Li Wen, who had attended school with Yao in China and was then living in Atlanta. Li Wen and her husband Robert Wen owned GLW, which was in the business of importing goods from China. Ms. Wen told Yao she had previously helped four families come to the United States under an L-1 visa.[1] She explained to Yao that if he used an L-1 visa to come to the United States, he could get his "green card" a year and a half later. Li Wen proposed establishing a joint venture between Zhaoqing Crafts and GLW. As part of the visa requirements, Yao would be employed by the joint venture.

The joint venture was organized as a Georgia corporation, China

---

[1] The attorney who prepared the corporate and immigration documentation testified that the L-1 nonimmigration work visa allows international companies that are doing business in the United States to transfer executives or managers to the United States to work.

Crafts & Art, and was owned equally by GLW and Zhaoqing Crafts. GLW and Zhaoqing Crafts were each responsible for contributing $50,000 toward the initial capitalization of the joint venture. Li Wen asked Yao to transfer Zhaoqing Crafts' capital contribution to GLW's account. Yao transferred $50,000 in personal funds, on behalf of Zhaoqing Crafts, to GLW's account. Although $49,995 was deposited in the GLW account, GLW eventually transferred only $43,000 into China Crafts' account. The remainder of the money was spent on expenses related to a furniture show.

Documents that Li Wen faxed to Yao indicated that China Crafts would hire Yao and engage in active business. Under the organizational documents of the joint venture, Yao was vice president of China Crafts, Robert Wen was the president, and Li Wen was the secretary. Yao was to act as import manager, at an initial salary of $40,000 a year. Li Wen also asked Yao to secure shipment of a crate of goods from China before he left Japan.

Yao's visa was approved on January 18, 1994. He arrived in Atlanta on April 23, 1994, and met with Robert Wen the next day. Mr. Wen told Yao that if Yao wanted to stay with China Crafts and get Wen's help in securing permanent residency, Yao must guarantee $300,000 in sales for the joint venture by arranging for $300,000 in goods to be delivered from China. Yao would be responsible for paying taxes on the $300,000 in goods whether they were actually sold or not, as well as taxes on his and Mr. Wen's salary. This was the first time Yao had been informed of these additional requirements, but Robert Wen explained that if he had told Yao up front, Yao would not have come to the United States. A few days later, Robert Wen sent Yao a document stating that Yao would have to provide three months of his salary, in cash, to China Crafts if he wanted to remain employed by the company. Robert Wen told Yao that Yao could not work for China Crafts if he did not come forward with the money and that he would no longer be responsible for Yao's continued residency. Robert Wen also demanded repayment of attorney fees for the visa application, and Yao provided a partial payment of $1,500 in travelers checks for that amount.

Following the conversations between Robert Wen and Yao, both Wens met with Yao, and Li Wen told Yao that his $50,000 contribution to China Crafts was a charge for getting a visa for Yao and his family and was not excessive. After the meeting with Robert and Li Wen, Yao did not return to work. Upon advice of counsel, he initiated the formation of a subsidiary of Zhaoqing Crafts so that he would not lose his resident status due to loss of employment. Yao worked at GLW's offices for three days but was never compensated for his time.

Instead of cash, GLW contributed $50,000 in furniture to the joint venture. China Crafts then bought $33,000 in additional inven-

tory from GLW. Although it controlled over $80,000 in inventory from 1993 to 1995, China Crafts made no sales to the public. China Crafts, beginning in January 1994, paid Robert Wen a salary of $3,800 a month. Even though China Crafts had no public sales, it entered into a sublease with GLW for $1,800 a month. GLW bought back some inventory from China Crafts, but GLW subsequently went bankrupt.

1. Initially, we address plaintiffs' motion to dismiss the appeal. Defendants failed to file a separate enumeration of errors as required by then applicable Court of Appeals Rule 22. The enumeration of errors was, however, set forth in the brief. Rule 22 was amended effective December 23, 1999, and no longer requires that the enumeration of errors be filed separately. We decline to dismiss the appeal because of defendants' violation of then applicable Rule 22.[2]

Plaintiffs also ask that the appeal be dismissed because the sequence of arguments in defendants' brief does not follow the order of the enumeration of errors, nor is it numbered accordingly, as required by Court of Appeals Rule 27 (c) (1). It has been our practice, however, to consider an appellant's enumeration of errors to the extent we can discern them even if the argument in the brief fails to follow the sequence in the enumeration of errors.[3]

Plaintiffs also complain that defendants failed to follow Court of Appeals Rule 27 (a) (1), which requires that appellants, in part one of their brief, set forth a statement of the facts and proceedings necessary for the consideration of the errors complained of. Defendants' brief contains a recitation of facts and references to the record and is sufficient to comply with Rule 27 (a) (1).

Finally, plaintiffs move to dismiss the appeal because the brief was unfairly extended by small type in violation of Court of Appeals Rule 1 (c). In particular, plaintiffs complain that defendants' appellate brief contained type size which was ten percent smaller than allowed. Under Rule 1 (c) we may order inappropriately formatted documents to be redacted and recast. We did not issue such an order in this case, and we do not believe that plaintiffs have been prejudiced so as to warrant the harsh remedy of dismissal for failure by defendants to correctly format their appellate brief.

2. Plaintiffs maintain that defendants failed to preserve their claims of error regarding the trial court's failure to grant a directed verdict. Defendants moved for a directed verdict at the conclusion of plaintiffs' case but did not renew the motion at the end of the trial. Nor did defendants move for judgment notwithstanding the verdict. Therefore, the plaintiffs maintain, the trial court never ruled on the

---

[2] See, e.g., *Jarrett v. Butts*, 190 Ga. App. 703, 704 (1) (379 SE2d 583) (1989).
[3] See *Home Ins. Co. v. Wynn*, 229 Ga. App. 220, 224 (6) (493 SE2d 622) (1997); *In the Interest of C. W. S.*, 231 Ga. App. 444, 445 (1) (498 SE2d 813) (1998).

motion for directed verdict based on the entire trial record. We find this argument unpersuasive. OCGA § 9-11-50 (a) provides that "[a] motion for a directed verdict may be made at the close of the evidence offered by an opponent or at the close of the case." There is no statutory requirement that a motion for directed verdict be renewed at the end of trial. Furthermore, OCGA § 5-6-36 (b) provides: "A motion for judgment notwithstanding the verdict need not be filed as a condition precedent to review upon appeal of an order or ruling of the trial court overruling a motion for directed verdict."

3. In their first five enumerations of error, defendants claim that the trial court erred by failing to direct a verdict on Yao's claims of fraud, misrepresentation, conversion, breach of fiduciary duty, and breach of contract. A trial court should grant a motion for directed verdict "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict."[4] When determining whether any conflict in the evidence exists, the trial court must construe the evidence most favorably to the party opposing the motion for directed verdict.[5] The standard used to review the grant or denial of a directed verdict is the "any evidence" test.[6] Applying this standard with respect to each of plaintiffs' claims, we find no error.

(a) In order to prove fraud, Yao must show the following elements: (1) a false representation; (2) scienter; (3) intention to induce plaintiff to act or refrain from acting; (4) justifiable reliance by plaintiff; and (5) damage to plaintiff.[7] With regard to the element of scienter, "[t]he gist . . . of an action for damages in tort based on the falsity of representations is that they must have involved actual moral guilt."[8]

Here, the claim of fraud is based on the misrepresentations made to Yao concerning the terms of the joint venture and Yao's employment. Under the original terms of the joint venture proposed by the Wens, Yao and Zhaoqing Crafts would each contribute $50,000 to the capitalization of China Crafts, which would effectively be controlled by the Wens. Yao testified, however, that after he arrived in the United States, the Wens informed him that he could not work for China Crafts without a contribution of additional funds. According to Yao, Mr. Wen had refrained from informing him of this additional requirement before he traveled to the United States, because Yao

---

[4] OCGA § 9-11-50 (a).
[5] *Southern R. Co. v. Lawson*, 256 Ga. 798, 799 (1) (a) (353 SE2d 491) (1987).
[6] *Skelton v. Skelton*, 251 Ga. 631, 633 (4) (308 SE2d 838) (1983).
[7] *Lykins v. Nationwide Mut. Ins. Co.*, 214 Ga. App. 577, 579 (2) (448 SE2d 716) (1994).
[8] (Citations and punctuation omitted.) *Bennett v. Clark*, 192 Ga. App. 698, 699 (1) (385 SE2d 780) (1989).

would not otherwise have relocated. Yao also testified that Li Wen told him that she considered the $50,000 initial contribution to be a fee for arranging for Yao and his family to come to the United States, even though the funds were designated as a capital contribution. Moreover, after Yao left China Crafts, the Wens and GLW did not conduct any business through the joint venture but simply siphoned cash out of the company by entering into a sublease with GLW for space it did not need and by selling furniture from GLW to China Crafts. This evidence was sufficient to allow the jury to conclude that the Wens and GLW never intended to go forward with the joint venture on the terms initially presented to the plaintiffs. As there is evidence to support each element of fraud, the trial court did not err when it refused to direct a verdict on the issue of fraud.

(b) Conversion is the unauthorized assumption and exercise of the right of ownership over personal property belonging to another.[9] In support of plaintiffs' conversion claim, evidence shows the $50,000 capital contribution from Zhaoqing Crafts was deposited in GLW's account, not China Crafts', and only $43,000 was eventually transferred to China Crafts. The difference was applied by the Wens and GLW to support a furniture show. The evidence supports the jury's verdict in favor of plaintiffs on the conversion claim.

(c) The Wens and China Crafts owed a fiduciary duty to Zhaoqing Crafts as a shareholder of China Crafts. It is well settled that corporate officers and directors have a fiduciary relationship to the corporation and its shareholders and must act in good faith.[10] There is also a fiduciary relationship between the corporation and its stockholders.[11] Here, the evidence supports a finding that the Wens and GLW, with the cooperation of China Crafts, siphoned off the capital of China Crafts for their personal benefit, for no legitimate business purpose, and to the detriment of Zhaoqing Crafts. "A fiduciary's duty of good faith prohibits him from appropriating for himself the assets and property of the corporation."[12] The trial court did not err in refusing to direct a verdict on the claim of breach of fiduciary duty.

(d) Although defendants argue that the trial court erred by failing to direct a verdict on plaintiffs' breach of contract claim, we need not address this issue because the jury found in favor of the defendants on that claim. It is therefore moot.

4. A verdict against defendant China Crafts may be authorized

---

[9] *Weldon v. Trust Co. Bank &c.*, 231 Ga. App. 458, 463-464 (4) (499 SE2d 393) (1999).

[10] *Henderson v. KM Systems*, 188 Ga. App. 893, 899 (3) (374 SE2d 550) (1988), overruled on other grounds by *Cohen v. William Goldberg & Co.*, 262 Ga. 606, 611 (2) (423 SE2d 231) (1992).

[11] *Frye v. Commonwealth Investment Co.*, 107 Ga. App. 739, 745 (3) (131 SE2d 569) (1963).

[12] *Quinn v. Cardiovascular Physicians, P.C.*, 254 Ga. 216, 219 (5) (326 SE2d 460) (1985).

only for a breach of fiduciary duty.[13] The verdict of the jury is sustainable on this count alone, however. From the record, it appears that damages awarded to plaintiffs were not allocated between the various theories of recovery nor considered separately as to each defendant. Given that the verdict against China Crafts is sustainable under the theory of breach of fiduciary duty, we will presume that the jury decided its verdict on that basis.[14]

5. In their sixth enumeration of error, defendants claim that the trial court entered a judgment inconsistent with the verdict. They maintain that the jury awarded $30,000 to plaintiffs and defendants each on plaintiffs' verdict form and that the final judgment should have been entered in favor of defendants in the amount of $7,250.

In response, plaintiffs argue that because no objection was made to the judgment below, defendants have no standing to raise this issue on appeal.[15] Defendants maintain that because the judgment was erroneous as a matter of law, we may consider the question on appeal.[16]

Pretermitting whether defendants have waived their right to object to the judgment, their arguments are based on writings made on the plaintiffs' verdict actually returned by the jury, and this document was not made part of the record on appeal. We cannot address an argument dependent upon a document that is not in the record.[17] The record reflects that the court orally interpreted the verdict and discussed it with the jury foreman. As reflected in the record, the jury verdict is consistent with the final judgment.

6. Defendants maintain that the trial court erred by allowing the use of the interpreter, Leusie Liang. Liang had no formal training and was a neighbor of Yao, although she testified that she knew him by reputation only. The selection of an interpreter, however, is within the sound discretion of the trial court.[18] Furthermore, the defendants cannot show any harm from the use of this interpreter. It is apparent from the record that the Wens speak both English and Cantonese and could have objected — and at one point did object — to request a clarification if they were unhappy with the translation. The trial court did not err in allowing the interpreter.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

---

[13] There is no evidence to support a fraud or conversion claim against China Crafts. China Crafts was not in existence at the inception of the alleged fraud. Nor did China Crafts appear to be involved in converting Zhaoqing Crafts' funds.

[14] See *Evans v. Maiuro*, 170 Ga. App. 672, 673 (318 SE2d 69) (1984).

[15] See *Witty v. McNeal Agency*, 239 Ga. App. 554, 559-560 (3) (521 SE2d 619) (1999).

[16] See *Long v. Marion*, 182 Ga. App. 361, 365 (5) (355 SE2d 711) (1987).

[17] See, e.g., *Acker v. Jenkins*, 178 Ga. App. 393, 394 (343 SE2d 160) (1986).

[18] *Choi v. State*, 269 Ga. 376, 377 (3) (497 SE2d 563) (1998).

DECIDED MARCH 23, 2000.

*Melvin L. Dansby*, for appellants.

*Gambrell & Stolz, Irwin W. Stolz, Jr., Seaton D. Purdom, Robert G. Brazier*, for appellees.