## A01A2478. MOSLEY v. THE STATE.
(560 SE2d 305)

MIKELL, Judge.

A jury convicted Phillip L. Mosley of violating the Georgia Racketeer Influenced & Corrupt Organizations (RICO) law by committing 22 predicate acts of theft by taking and of violating the Georgia Securities Act of 1973.[1] On appeal, Mosley asserts that the evidence was insufficient to support his convictions and that the admission of certain expert testimony rendered the trial fundamentally unfair. We disagree and affirm.

Viewed in the light most favorable to the verdict, the evidence adduced at trial shows that Mosley was registered in Georgia as a securities salesperson[2] from February 21, 1985, until July 14, 1995. Shortly before his registration lapsed, Mosley approached his longtime clients for money. One such client, Christine Roberts, testified that Mosley prepared an account review for her on May 24, 1995, showing her total portfolio value to be $41,747.25. Mosley advised Roberts to liquidate one of the accounts and invest the funds in an offshore trust fund called Greystone Securities. Mosley told her the investment would prove extremely lucrative within six months, so she agreed to his recommendation. Mosley prepared a liquidation letter for Roberts to sign and instructed her to wire the funds she obtained to a bank in Jamaica. Roberts signed all the documents, obtained the funds, and took the money to her bank. A bank officer filled out the form authorizing the wire transfer of $16,570.02 to a bank in Jamaica. Roberts testified that when she asked Mosley about getting her money back, he told her the fund was having problems but assured her he was working on it. Roberts never got her money back.

The next year, in May 1996, Mosley asked Roberts for a loan. Roberts balked initially, explaining that she was preparing to retire. But Mosley said he had an investment coming through and would return the money to her fivefold within six months. Roberts agreed to give Mosley $21,000, and he promised to repay her $105,000. The transaction was memorialized in a promissory note stating that "in the event that the business transaction that this loan is securing does not materialize," Roberts would be repaid $21,000 plus ten percent interest. Roberts testified that the deal was "not exactly a personal loan," but rather she expected to be repaid based on the money Mosley was expecting. At Mosley's urging, Roberts liquidated an-

---

[1] The jury also convicted Mosley of three separate counts of violating the Georgia Securities Act of 1973, but the court merged those convictions with the RICO conviction for sentencing purposes.

[2] See OCGA § 10-5-3.

other account in order to secure the funds, which she gave him on May 24, 1996. Mosley never repaid Roberts, and he ultimately disappeared.

Another of Mosley's former clients, Edna Louise Coffee, testified that Mosley began asking her and her late husband, Dan, for money in late 1995. Mosley indicated that he needed money to pay his employees, his rent, and his telephone bill. As evidenced by promissory notes and cancelled checks, they made him four loans totaling $63,000. The notes permitted 90-day extensions, and each loan was extended for that period; however, no payment was ever made. The Coffees were not able to locate Mosley, and he never returned their telephone calls.

Mosley's next victim, Timothy Campbell, owned a shoeshine business. Campbell testified that he first began shining Mosley's shoes in 1982. Mosley bragged that his investment business was doing so well that he planned to retire when he reached the age of 50. He urged Campbell to give him money to invest. Finally, in 1996, Campbell decided to invest $7,000 of his savings with Mosley. Campbell testified that Mosley explained that he had an overseas deal in the works, and he showed Campbell "a bunch of papers" regarding the investment. The men executed a promissory note on May 8, 1996, reflecting that Campbell would be repaid $35,000 on his $7,000 investment or, if the "business transaction that this loan is securing does not materialize," $7,000 plus ten percent interest. The note permitted two 180-day extensions. After taking Campbell's money, Mosley never reappeared at the shoeshine shop. Campbell called Mosley, but ultimately Mosley's telephone was disconnected. Campbell hired a private investigator but was never able to find Mosley.

Two experts with the securities division of the secretary of state's office, Duane Fry, the director of enforcement, and Greg Hubler, a senior investigator, testified at length concerning how the office processes complaints of securities violations. Each witness explained the meaning of a security. Hubler testified that the Campbell note could be construed as an investment contract, that the product in which Campbell invested was a security, and that it should have been registered with the secretary of state's office. Fry, in turn, explained why the Roberts note met the definition of a security. Fry testified that Greystone Securities was not a registered dealer in Georgia. Finally, Fry testified that in his opinion, the promissory notes signed by the Coffees were securities as well.

1. To prove a RICO violation, the state must show that the defendant committed two or more predicate criminal acts of the type included in the RICO statute as part of an enterprise engaging in a

pattern of racketeering activity.[3] Mosley argues that the state failed to prove that he committed the requisite predicate criminal acts.

The indictment charged Mosley with committing twenty-two predicate acts: seven acts of theft by taking (nos. 4, 8, 12, 13, 17, 18, and 22), five violations of OCGA § 10-5-5 (a) (1) (nos. 1, 5, 9, 14, and 19), five violations of OCGA § 10-5-3 (nos. 2, 6, 10, 15, and 20), and five violations of OCGA § 10-5-12 (a) (2) (nos. 3, 7, 11, 16, and 21). We note that a RICO conviction requires proof that a defendant has committed two or more offenses of the kind included in the RICO statute; it does not require the state to prove all of the alleged predicate offenses.[4] The evidence in this case supports the jury's determination beyond a reasonable doubt that Mosley committed at least two predicate offenses as charged in the indictment.

OCGA § 10-5-5 (a) (1) prohibits the sale of unregistered securities. The evidence is clear that the product in which Roberts and Campbell invested was not registered. The evidence is equally clear that the promissory notes which reflect those transactions are securities. The Georgia Securities Act classifies "any note" as a "security."[5] However,

> the label placed on the instrument by the parties or by the courts does not determine whether the instrument is a security. Instead, the characteristics of the instrument and the underlying economic reality are the significant factors for a court to consider in classifying an instrument as a security.[6]

The test for determining if an instrument is a security is whether it shows "an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others."[7] The evidence as to Roberts and Campbell fits this definition. Each made what was represented to them as "an investment by which [they] may reasonably have expected to profit,"[8] based on Mosley's repeated assurances. Finally, these victims were required to rely on the management of others to achieve the profit. Accordingly, as to these victims, the evidence was suffi-

---

[3] *Brannon v. State*, 243 Ga. App. 28, 30 (1) (530 SE2d 761) (2000).

[4] *Bethune v. State*, 198 Ga. App. 490, 491 (1) (402 SE2d 276) (1991).

[5] OCGA § 10-5-2 (26).

[6] *Dunwoody Country Club &c. v. Fortson*, 243 Ga. 236, 238 (253 SE2d 700) (1979).

[7] (Punctuation omitted.) *Tech Resources v. Estate of Hubbard*, 246 Ga. 583, 584 (272 SE2d 314) (1980), citing *United Housing Foundation v. Forman*, 421 U. S. 837, 852 (95 SC 2051, 44 LE2d 621) (1975).

[8] *Huggins v. Chapin*, 227 Ga. App. 340, 342 (1) (489 SE2d 109) (1997).

cient to establish securities transactions rather than loans.[9] It follows that the state proved at least two predicate offenses in support of Mosley's RICO conviction.

2. In his second enumeration of error, Mosley argues that the state's expert witnesses should not have been allowed to testify that the promissory notes at issue were securities, as that testimony constituted an opinion on the ultimate issue in the case. However, Mosley voiced no objection to this testimony at trial and may not do so for the first time on appeal. "All evidence is admitted as of course, unless a valid ground of objection is interposed, the burden being on the objecting party to state at the time some specific reason why it should not be admitted. A failure to make such objection will be treated as a waiver."[10]

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 13, 2002.

*Phyllis V. Harris*, for appellant.
Phillip L. Mosley, *pro se*.
*James R. Osborne, District Attorney, Thomas J. Melanson, Assistant District Attorney, Thurbert E. Baker, Attorney General*, for appellee.

---

[9] See *Moss v. State*, 209 Ga. App. 486, 487 (1) (433 SE2d 692) (1993).
[10] (Citations and punctuation omitted.) *Hawkins v. State*, 230 Ga. App. 627, 629 (2) (497 SE2d 386) (1998).