**SEA CARRIERS CORPORATION,**
Plaintiff,

v.

**EMPIRE PROGRAMS INC.**
**and Robert A. Martin,**
Defendants.

**No. 04 CIV. 7395(RWS).**

United States District Court,
S.D. New York.

May 15, 2007.

---

Becker Meisel LLC, Eisenhower Plaza II, Livingston, NJ, By Joseph G. Harraka, Jr., for Plaintiff.

Law Offices of Allan H. Carlin, New York City, By Allan H. Carlin, for Defendants.

## OPINION

SWEET, District Judge.

Defendants Empire Programs, Inc. ("Empire") and Robert A. Martin ("Martin") (referred to collectively as the "Defendants") have moved pursuant to Rule 56, Fed.R.Civ.P., for summary judgment dismissing the Amended Complaint filed by Plaintiff Sea Carriers Corporation ("Sea Carriers" or "Plaintiff") in its entirety. For the reasons set forth below, the motion for summary judgment is granted in part and denied in part.

## The Parties

Sea Carriers, a Delaware corporation, was founded by Per G. Barre ("Barre"). Sea Carriers has its principal place of business in Connecticut.

Empire was incorporated in New Jersey in 2002. Empire's principal place of business is located in New Jersey.

Martin, a citizen of the state of New Jersey, is owner and president of Empire. Martin has also conducted business as Empire Programs, Inc. ("Empire DE"), an entity incorporated in Delaware in 1976 but dissolved prior to commencement of this action or of the relationship among Sea Carriers, Barre, Martin, and Empire and/or Empire DE.

## Prior Proceedings

On September 16, 2004, Sea Carriers filed a complaint against Empire, alleging six causes of action: (1) breach of contract under an alleged joint venture agreement; (2) breach of an implied covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) declaratory relief entitling Sea Carriers to participate in any recoveries by Empire NJ; (5) imposition of a constructive trust; and (6) an accounting. The gravamen of the complaint is Sea Carriers' effort to establish an entitlement to share in any recoveries by Empire arising out of enforcement actions against New York Stock Exchange specialist firms that were found to have engaged in trading abuses from at least 1999 through 2003—specifically, the firm of Spear, Leeds & Kellogg Specialists LLC.

On January 19, 2005, Sea Carriers filed a motion for expedited discovery and trial pursuant to Rule 26(d), Fed.R.Civ.P., and 28 U.S.C. § 1657. Sea Carriers simultaneously moved for a preliminary injunction pursuant to Rule 57, Fed.R.Civ.P., to enjoin the Administrator of a "Fair Fund" established under Section 308(a) of the Sarbanes–Oxley Act of 2002, 15 U.S.C. § 7246, from distributing any funds to Empire and to enjoin Empire from accepting any such funds until Sea Carriers' right to share in such funds had been adjudicated. While the motion for expedited discovery for all parties was approved by an order of the Court on February 18, 2005, Sea Carriers' motion for a preliminary injunction was denied based on the absence of an immediate need for relief, but with leave to renew.

On November 4, 2005, Sea Carriers filed a motion for an order pursuant to Rule 11, Fed.R.Civ.P., for imposition of sanctions against Empire. The motion was denied by an order of the Court filed on September 27, 2006, with leave granted to renew the motion. In addition, on November 17, 2005, Sea Carriers filed a motion for partial summary judgment pursuant to Rule 56, Fed.R.Civ.P., which was denied on April 28, 2006. *Sea Carriers Corp. v. Empire Programs, Inc.*, No. 04 Civ. 7395(RWS), 2006 WL 1148684 (S.D.N.Y. Apr.28, 2006) (the "April 2006 Opinion").

By an order to show cause filed on March 23, 2006, Sea Carriers again moved for a preliminary injunction order to enjoin the Fair Fund Administrator from distributing any funds to the Defendants and to enjoin Empire and Martin from accepting any such funds until Sea Carriers' right to share in such funds had been adjudicated. The hearing was adjourned to April 26, 2006, on which date the motion was marked fully submitted. The motion was denied in an opinion filed on November 20, 2006. *Sea Carriers Corp. v. Empire Programs, Inc.*, No. 04 Civ. 7395(RWS), 2006 WL 3354139 (S.D.N.Y. Nov.20, 2006).

The Amended Complaint was filed on May 16, 2006, which, *inter alia*, added Martin as a defendant in the pending action. Permission for filing the Amended

Complaint was granted in an order dated April 11, 2006.

The instant motion for summary judgment was filed by the Defendants on November 17, 2006, and marked fully submitted on January 25, 2007.

### The Facts

The facts have been set forth in the parties' Local Rule 56.1 Statements and are in significant conflict.

The relationship between the parties began in 1998, when discussions were held between Martin, holding himself out as president of Empire Programs, Inc., and Barre, the principal of Sea Carriers. An agreement was reached which governed the relationship between Sea Carriers and Empire Programs, Inc. from the fall of 1998 through December 2002 when the relationship is alleged to have been terminated by the consent of the parties. (Am. Compl.¶ 14).

In 1998, Martin opened an account at Spear, Leeds & Kellogg ("the SLK Account") under the name Empire Programs, Inc. Trading of the account was conducted using Sea Carriers' proprietary investment trading strategies. (Am.Compl.¶ 11.)

According to Sea Carriers, the arrangement was a joint venture entitling Sea Carriers to fifty percent of any moneys received by Empire Programs, Inc. as a consequence of the activity in the SLK Account. (Am.Compl.¶ 12.) According to Empire, under the arrangement, Barre was a trading advisor to Empire Programs, Inc. and was to receive fifty percent of the profits arising out of the SLK Account.

The contribution of each party to the enterprise, the intent of the parties in entering into the arrangement, control over the arrangement, and the allocation of losses, are all matters in dispute.

### Discussion

#### 1. The Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *SCS Commc'ns, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 338 (2d Cir.2004); *see generally* 11 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 56.11 (3d ed. 1997 & Supp.2004). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (internal citations omitted). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir.1995).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."

*Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 57 (2d Cir.1997). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Quarles v. Gen. Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985) ("[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment.").

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gibbs–Alfano v. Burton,* 281 F.3d 12, 18 (2d Cir.2002). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The nonmovant cannot escape summary judgment, however, "merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture," *W. World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted); *accord Giordano v. City of New York,* 274 F.3d 740, 749–50 (2d Cir.2001), particularly where such speculation is unsubstantiated. *See Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir.2001); *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). In other words, the non-movant must invoke more than just "metaphysical doubt as to the material facts." *Matsushita Elec. Indus.,* 475 U.S. at 586, 106 S.Ct.

1348. In order to defeat a motion for summary judgment, the non-moving party must offer sufficient evidence to enable a reasonable jury to return a verdict in its favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Byrnie,* 243 F.3d at 101; *Scotto,* 143 F.3d at 114.

### 2. Summary Judgment Is Inappropriate as to Count Four

Summary judgment as to Count Four of the Complaint was denied in the April 2006 Opinion on the grounds that four of the five elements for establishing the existence of a joint venture were in "sharp dispute." *Sea Carriers Corp.,* 2006 WL 1148684, at *2. Other than adding Martin as a defendant and indicating that any penalty assessed in favor of Empire may be "by virtue of the purported assignment," Count Four of the Amended Complaint is the same as that asserted in the original Complaint. (*Compare* Am. Compl. ¶¶ 41–44, *with* Compl. ¶¶ 37–39.) Since material issues of fact remain as to four of the five requisite elements of a joint venture, summary judgment as to Count Four of the Amended Complaint remains inappropriate.

### 3. Summary Judgment Is Granted on Count Two

██ . Based on Martin's denial of the existence of the alleged joint venture agreement, Count Two of the Amended Complaint seeks relief for breach of the implied covenant of good faith and fair dealing "implied in every contract." (Am. Compl.¶ 36.) Count One of the Amended Complaint seeks relief for breach of contract, again based on Martin's alleged denial of the existence of the alleged joint venture agreement. (*Id.* ¶ 34.)

██ As previously noted by this Court:

New York law does not recognize a cause of action for breach of an implied covenant independent of a claim for breach of the underlying contract. "Under New York law, parties to an express contract are bound by an implied duty of good faith, 'but breach of that duty is merely a breach of the underlying contract.'" *Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992) (quoting *Geler v. Nat'l Westminister Bank USA*, 770 F.Supp. 210, 215 (S.D.N.Y.1991)). Since a claim for breach of the implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim, it must be dismissed as a matter of law as redundant.

*Computech Int'l, Inc. v. Compag Computer Corp.*, No. 02 Civ. 2628(RWS), 2002 WL 31398933, at *4 (S.D.N.Y. Oct.24, 2002) (citing *Alter v. Bogoricin*, No. 97 Civ. 0662, 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997); *Vill. on Canon v. Bankers Trust Co.*, 920 F.Supp. 520, 534 (S.D.N.Y.1996); *Frutico S.A. De C.V. v. Bankers Trust Co.*, 833 F.Supp. 288, 300 (S.D.N.Y.1993); *O'Hearn v. Bodyonics, Ltd.*, 22 F.Supp.2d 7, 11–12 (E.D.N.Y.1998); *Canstar v. J.A. Jones Constr. Co.*, 212 A.D.2d 452, 622 N.Y.S.2d 730, 731 (N.Y.App. Div. 1st Dep't 1995)).[1]

Sea Carriers has laid out a number of alleged "bad faith actions on the part of the Defendants" that deprived Sea Carriers "of the benefits it reasonably expected to enjoy under the parties' contract ...." (Pl.'s Mem. in Opp'n 9–10.) Although Sea Carriers has asserted that these "bad faith actions" result in a claim for breach of the implied covenant of good faith and fair dealing, as a matter of New York law, any claim based on these actions must be as-serted as part of Sea Carriers' breach of contract claim.

Accordingly, Defendants' motion is granted as to Count Two.

### 4. Sea Carriers May Be Barred from Bringing Its Other Claims for Failure to Register As an Investment Adviser Under the Connecticut Uniform Securities Act

■ Defendants have asserted that Sea Carriers' claims are barred for failure to register as an investment adviser under the Connecticut Uniform Securities Act (CUSA), C.G.S.A. § 36b (2007). (*See* C.G.S.A. §§ 36b–6(c) and 36b–29(h); Defs.' Mem. in Supp. 17–19.) In light of the material issues of fact remaining with regard to the existence of a joint venture between the parties, it would be inappropriate at this time to strictly apply this non-suit provision of the Connecticut statute.

Sea Carriers has contended that its causes of action for breach of contract (Count One), breach of fiduciary duty (Count Three), and imposition of a constructive trust (Count Five) may proceed independent of any determination as to the existence of a joint venture. (Pl.'s Mem. in Opp'n 5.) If it is determined at trial that the relationship between the parties did not constitute a joint venture or partnership, however, the CUSA non-suit provision, C.G.S.A. § 36b–29(h), may act as a bar to Sea Carriers' other claims. As discussed further below, under such circumstances, Sea Carriers could meet the definition of an investment adviser under CUSA § 36b–3(11). Therefore, because Sea Carriers failed to register as an investment adviser with the Connecticut Banking Commissioner in compliance with

---

**1.** The parties have both argued that New York law applies on this point. Therefore, the Court has applied New York law without deciding any choice of law question.

CUSA § 36b–6(c), pursuant to CUSA § 36b–29(h), Sea Carriers could be barred from bringing these other claims.

### a. Sea Carriers May Have Met the Definition of an Investment Adviser

Under the Connecticut statute, an investment adviser is defined as:

> any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing or selling securities, or who, for compensation and as a part of a regular business, issues or promulgates analyses or reports concerning securities.

C.G.S.A. § 36b–3(11). As a corporation, Sea Carriers meets the definition of a "person" under the statute. *See id.* § 36b–3(15). Therefore, the remaining questions would be: (1) did Sea Carriers' actions in carrying out the agreement constitute "engag[ing] in the business of advising others" on securities investments; and (2) if so, was Sea Carriers compensated for the investment advice rendered.

### i. Advising Others

The analysis of the Court of Appeals for the Second Circuit in *Abrahamson v. Fleschner*, 568 F.2d 862 (2d Cir.1977), is instructive here. Although the *Abrahamson* court analyzed the definition of an investment advisor under the federal Investment Advisers Act of 1940 (the "IAA"), 15 U.S.C. § 80b–2(a)(11) (2006), the definition is identical to the definition employed by the Connecticut statute, C.G.S.A. § 36b–3(11). Due to the common use of similar language, federal and state courts in Connecticut have analogized to the federal statute when interpreting CUSA provisions. *See, e.g., Couldock & Bohan, Inc. v.*

*Societe Generale Sec. Corp.*, 93 F.Supp.2d 220, 232 (D.Conn.2000) (analogizing analysis of claim under CUSA § 36b–29(h) to analysis of claim under IAA § 29(b)). Furthermore, similar to the congressional intent behind the IAA, the Connecticut legislature designed the CUSA provisions to ensure that paid advice given to investors is not compromised, tainted, or abused. *Compare Abrahamson*, 568 F.2d at 870–71, *with MacPeg Ross O'Connell & Goldhaber, Inc. v. Castello*, 686 F.Supp. 397, 399 (E.D.N.Y.1988).

In *Abrahamson*, the Court of Appeals held that the general partners of an investment partnership were investment advisors under the federal statute, having " 'engage[d] in the business of advising others' with respect to investments" when they managed the partnership investments. *Abrahamson*, 568 F.2d at 870. This assessment was based, in part, on the plain language of the statute, evidence of legislative intent, and by the "broad remedial purposes" of the federal statute. Specifically, the Court of Appeals found that "many investment advisers 'advise' their customers by exercising control over what purchases and sales are made with their clients' funds." *Id.* at 871; *see also S.E.C. v. Kenton Capital, Ltd.*, 69 F.Supp.2d 1, 14 (D.D.C.1998) (citing *United States v. Elliott*, 62 F.3d 1304, 1310 (11th Cir.1995); *Abrahamson*, 568 F.2d at 871) (finding that complete discretion as to how to invest funds indicated "investment advice").

That is exactly what Sea Carriers did here. Sea Carriers has conceded that "[o]n day-to-day trading decisions . . . Per Barre and Sea Carriers executed orders without consulting in advance or clearing trading decisions with Martin," (Pl.'s Mem. in Supp., Nov. 17, 2005, at 18), and Martin's deposition testimony supports the same, (O'Connell Decl., Nov. 11, 2005, Ex. 61 at 75:3–76:4). Similarly, Barre has al-

leged that "Sea Carriers Corporation traded a managed account for Empire, utilizing Empire's capital." (Am. Compl. Ex. F at ¶ 6.)

### ii. Compensation

It is undisputed that pursuant to the agreement between Sea Carriers and the Defendants, Sea Carriers was to receive, and did receive, a substantial percentage of the net trading profits. (*See* Defs.' Local Rule 56.1 Statement § 3; Pl.'s Local Rule 56.1 Statement § 3; Am. Compl. Ex. A.)

Sea Carriers has asserted that an agreement to share in the investment profits cannot constitute compensation in satisfaction of the definition of investment advisor under CUSA § 36b–3(11). (Pl.'s Trial Mem., May 2, 2007, 5.) In support, Sea Carriers cites CUSA § 36b–5(b)(1)(A), which prohibits the use of investment advisory contracts that provide for the compensation of investment advisors "on the basis of a share of capital gains upon or capital appreciation of the funds or any portion of the funds of the client." (Pl.'s Trial Mem. 5.) Just because the statute prohibits investment advisory contracts that provide for compensation based on a percentage of profits, however, does not mean that receipt of such distributions by Sea Carriers did not constitute compensation.

In addition, Sea Carriers has asserted that its percentage of the profits was not compensation, but rather assets or equity which, at times, Martin maintained and used to leverage returns on the SLK account. (Pl.'s Mem. in Opp'n 21.) A determination that there was not a joint venture or partnership between the parties, however, would undermine such an assertion.

### iii. Adviser–Investor Relationship

Sea Carriers has further contended that the relationship between the parties to this action is not of "an 'investment advisory' nature within the meaning of the CUSA," and that Sea Carriers was thereby not required to comply with the statute's registration requirement. (Pl.'s Trial Mem. 3–4; Pl.'s Mem. in Opp'n 21–22.) This contention is largely based on the existence of a joint venture and the degree of control that the Defendants exercised over the SLK account, as well as the Defendants' level of experience and sophistication with respect to investment matters in general. A finding that there was no joint venture or partnership between the parties, however, would negate the contention that an adviser-investor or adviser-client relationship did not exist.

In addition, while the IAA has carved out an exception to the registration requirement for investment advisors that only advise a limited number of sophisticated investors, there is no equivalent CUSA exception. Specifically, the IAA's "private adviser exemption" eliminates the registration requirement for:

> any investment adviser who during the course of the preceding twelve months has had fewer than fifteen clients and who neither holds himself out generally to the public as an investment adviser nor acts as an investment adviser to any investment company registered under subchapter I of this chapter, or a company which has elected to be a business development company pursuant to section 80a–53 of this title and has not withdrawn its election.

15 U.S.C. § 80b–3.

In contrast, the CUSA provides a similar exemption, but only for an investment advisor that "has no place of business in this state and, during the preceding twelve months, has had no more than five clients

who are residents of this state." C.G.S.A. § 36b–6(e)(3). This more limited exemption indicates that the State of Connecticut is concerned with monitoring almost all investment advisors that, like Sea Carriers, have a place of business in the state. In light of the apparent intention of the Connecticut legislature to institute a broad-reaching registration requirement for investment advisors, if there was an adviser-investor relationship, Sea Carriers would accordingly be included under the CUSA's registration requirement regardless of the investor's level of control, experience, or sophistication.

### b. The Statutory Bar to Litigation May Be Triggered By a Failure to Register

If it is established that Sea Carriers met the CUSA definition of an investment adviser, Sea Carriers would have been required to register as such pursuant to CUSA § 36b–6(c), which states: "No person shall transact business in this state as an investment adviser unless registered as such by the commissioner as provided in section 36b–2 to 36b–33, inclusive, or exempted pursuant to subsection (e) of this section." None of the exemptions in subsection (e) applied to Sea Carriers.[2]

Sea Carriers has its principal place of business in Greenwich, Connecticut (Am. Compl.¶ 1), and it is undisputed that Sea Carriers conducted the relevant trades on the SLK account from its Connecticut office. (See Pl.'s Local Rule 56.1 Statement, Dec. 18, 2006, ¶ 18; Barre Decl., Dec. 18, 2006, ¶ 15.) It is also undisputed that, at the time, neither Sea Carriers nor Barre had registered as an investment advisor with the Connecticut Banking Commissioner. (See Carlin Decl., Dec. 12, 2005, Ex. A at 71:24–72:23.) Therefore, if Sea Carriers was acting as an investment adviser when conducting the relevant trades, Sea Carriers would have been in violation of CUSA § 36b–6(c).

Despite Sea Carriers' argument to the contrary (Pl.'s Trial Mem. 7–9), Sea Carriers' failure to register as an investment adviser with the Connecticut Banking Commissioner would be sufficient to trigger the litigation bar in CUSA § 36b–29(h), which expressly provides: "No person who has made or engaged in the performance of any contract in violation of any provision of sections 36b–2 to 36b–33, inclusive, or any regulation or order thereunder, ... may base any cause of action on the contract." Federal and state courts in Connecticut have interpreted this provision to extend to violations of the statute's registration requirements. See, e.g., Couldock & Bohan, Inc., 93 F.Supp.2d at 231–33 (finding statutory bar of CUSA § 36b–29(h) triggered due to Plaintiff's failure to register under the statute); Justice v. Gardner, No. CV020169851S, 2002 WL 31169773, at *3 (Conn.Super.Ct. Aug.23, 2002) ("Because neither the transaction nor the defendant was registered as required by the act, the defendant is in violation of the act and subject to the provisions of Connecticut General Statute § 36b–29."); see also Conn. Nat'l Bank v. Giacomi, 242 Conn. 17, 699 A.2d 101, 128

---

**2.** The pertinent part of CUSA § 36b–6(e) reads as follows:

> The following investment advisers are exempted from the registration requirements under subsection (c) of this section: Any investment adviser that (1) is registered or required to be registered under Section 203 of the Investment Advisers Act of 1940; (2)

is excepted from the definition of investment adviser under Section 202(a)(11) of the Investment Advisers Act of 1940; or (3) has no place of business in this state and, during the preceding twelve months, has had no more than five clients who are residents of this state.

C.G.S.A. § 36b–6(e).

(1997) ("the remedial purpose of CUSA supports the conclusion that the scope of § 36–498(g) encompasses not only a contract illegal on its face, but also extends to the basic transaction underlying the contract");[3] *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F.Supp.2d 616, 634–35 (D.N.J.2005) (interpreting similar IAA provision to be triggered when contracts on their face or by their performance violate other provisions of the statute).

Plaintiff's contention that Defendants do not fall within the class of persons that the statute was designed to protect, (Pl.'s Trial Mem. 4), is unavailing. In applying CUSA § 36b–29(h), the *Couldock* court recognized "[t]he well-established rule ... that 'if the purpose of a licensing statute is the regulation of the business licensed and not merely the collection of revenue, a person not licensed cannot enforce a contract for services rendered within the scope of the regulated business.'" *Couldock & Bohan, Inc.*, 93 F.Supp.2d at 232 (quoting *Solomon v. Gilmore*, 248 Conn. 769, 731 A.2d 280, 293 (1999)). The court also looked to the Fifth Circuit's holding that the broad purpose of an analogous federal statute was "protecting the national public interest." *Id.* at 231–32 (citing *Reg'l Properties, Inc. v. Fin. & Real Estate Consulting Co.*, 678 F.2d 552, 559, 561–62 (5th Cir. 1982)). As a result, the *Couldock* court allowed the defendant, a registered broker-dealer, to assert that CUSA § 36b–29(h) barred the plaintiff's cause of action. *Id.* at 232.

Finally, Sea Carriers has contended that the Defendants should not be able to escape liability under this non-suit provision because of the nature of the very claims that Sea Carriers is pursuing against them. (Pl.'s Trial Mem. 9; Pl.'s Mem. in Opp'n 22–23.) Since the Defendants are not seeking to enforce the contract, however, such an assertion is also unavailing. *See, e.g., Lawrence v. Richman Group Capital Corp.*, No. 3:03CV850(JBA), 2005 WL 1949864, at *2 (D.Conn. Aug.11, 2005); *Couldock & Bohan, Inc.*, 93 F.Supp.2d at 233.

### Conclusion

Accordingly, based on the foregoing analysis, Defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted as to Count Two of the Amended Complaint, and that count is dismissed. Defendants' motion for summary judgment is denied as to the remaining counts of the Amended Complaint.

It is so ordered.

---

**3.** Then–CUSA § 36–498(g) was a precursor to the now-CUSA § 36b–29(h), and read: "No person who has made or engaged in the performance of any contract in violation of any provision of this chapter ... may base any cause of action on the contract." *See Conn. Nat'l Bank,* 699 A.2d at 128.